## STATE v. GRAHAM.

1. Where an accomplice is convicted after having been made a witness by the state, and received as such by the court, and after having made an ingenuous confession, such accomplice has an equitable claim to a judicial recommendation to the mercy of the pardoning power, which cannot be withheld without a violation of an established rule of practice.

2. It is competent for the court to order the accomplice to be acquitted at the trial, for the purpose of qualifying him as a witness for the state, or to accept from the defendant a plea admitting guilt to such a degree as, in the opinion of the court, is requisite; or for the court to assent to the entering of a *nolle prosequi* by the attorney-general.

On *certiorari* to the Camden Oyer and Terminer.

Argued at February Term, 1879, before BEASLEY, CHIEF JUSTICE, and Justices WOODHULL and REED.

For the state *J. P. Stockton*, Attorney-General.

State v. Graham.

, The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The defendant stands indicted for the crime of murder in the first degree. His accomplice was Benjamin Hunter, who has been convicted and executed. The defendant being arrested, acknowledged his guilt and implicated Hunter, and, both before the grand jury and at the trial of the latter, was a witness against him. It is admitted that the confession of the defendant was without reserve and was complete. The indictment against him has been brought here by *certiorari*, and the attorney-general now asks the advice of this court whether, in view of these facts, a *nolle prosequi* should be entered, or, if not, what other course should be pursued.

The English practice on such occasions seems to have assumed, long since, a settled form. It is this : when an accomplice is received by the court as a witness against his fellows, and makes a full disclosure, without prevarication or fraud, the understanding is that there is an implied promise that he will be recommended to the mercy of the crown. Such a procedure is obviously a substitute for the ancient method of approvement, which appears to have been obsolete even in the time of Lord Hale. The course in pursuing this old form was for the culprit, indicted for treason or felony, to confess the truth of the charge, and, upon being sworn, to reveal all the treasons and felonies within his knowledge, and to enter before a coroner his appeal against all his partners in crime who were within the realm. The criminal thus confessing was called the approver, or, in Latin, *probator*, and the person implicated was styled the appellee. By this confession and appeal the approver put it in the discretion of the court either to give judgment and award execution against him, or to respite him until the conviction of his partners in guilt; and if it was deemed advisable to admit him as an approver, and then if, upon being sworn, he made a full and true disclosure, and also convicted the appellee, either by his oath or on wager of battle, the king, *ex merito justitiæ*, pardoned him " as to his life." This practice, with its conditions

State v. Graham.

that the appellee could claim a trial by battle, and that grace to the approver should be dependent on his conviction of his associate in crime, was plainly at variance with modern sentiments and habits, and the consequence was that it passed out of use; but as the purpose it served was of value to juridical administration, it was inevitable, in the ordinary development of the law, that some equivalent should take its place. That equivalent was the modern practice, before referred to, of an implied pledge that the court would recommend the criminal who made a confession and was accepted as a witness, to the royal clemency. But such an implied pledge is not a legal right, but a ground for an equitable claim only, so that under no circumstances can it supply matter for a plea in bar, or otherwise constitute a basis of a defence. It may be that such a confession made in the confidence of a recommendation to mercy would not be considered voluntary in the legal sense, so as to legalize its introduction against the criminal on his trial, but this right of exclusion would seem to be the only right growing out of the affair that he could claim, *ex debito justitiæ*. The case that is the leading one on this subject is that of *Rex* v. *Rudd, Cowper* 332. In this case Lord Mansfield, after pointing out the three ways in law and practice which give accomplices a right to a pardon, which are, first, in case of approvement; second, the case of persons coming within certain statutes; and third, the case of persons to whom the king has, by special proclamation in the gazette or otherwise, promised his pardon, thus describes the modern method: " There is, besides, a practice which does not give a legal right, and that is where accomplices, having made a full and fair confession of the whole truth, are, in consequence thereof, admitted evidence for the crown, and that evidence is afterwards made use of to convict the other offenders. If in that case they act fairly and openly, and discover the whole truth, though they are not entitled of *right* to a pardon, yet the usage, the lenity and practice of the court, is to stop the prosecution against them, and they have an equitable title to the recommendation for the king's mercy." That this is the course in-

variably taken by the English courts will plainly appear by reference to any of the leading text-writers. 2 *Russ. on Crimes* 928 ; 1 *Phil. Ev.* 21 ; 4 *Black. Com.* 329. In giving effect to this proceeding the common mode is for the court to respite the trial until an opportunity is offered of making the promised application for the royal pardon.

The practice thus described has been approximately followed, very generally, by the American courts, and I have no doubt that it is a part of our inherited jurisprudence, for it was completely in vogue when our colonial existence terminated. It will be observed, however, that the closest assimilation that can be effected between our practice and its English model is by putting the confessing criminal on trial, and then, on his being found guilty, for the court to commend him to the clemency of the Court of Pardons, because, in this state, the power to remit the punishment exists in that tribunal only after the conviction of the criminal. I have no doubt, therefore, that if the present defendant should be put upon his trial and should be convicted, that it would be the duty of the judge presiding at the trial, if he should be satisfied that the confession of the prisoner on the trial of the accomplice was true and complete, to recommend him to the merciful consideration of the Court of Pardons. And perhaps no case can be found, either at home or abroad, in which such recommendation has not, in some measure, prevailed. According to the English routine, an entire immunity appears to have been, so far as I have observed, the result, without exception, of the judicial application ; but in this country there is one recorded case, at least, in which, instead of an absolute pardon, there was a commutation of the capital sentence to a milder punishment. This instance is referred to in the opinion in the case of *People* v. *Whipple*, 9 *Cowen* 714.

But this is not the judicial power to which an appeal is now made. If the prisoner should be tried and convicted, it has been shown that the course to be taken is entirely settled by the precedents ; but the question now asked is whether the court will advise that this prosecution shall, antecedently to a

trial, be abandoned. I have no doubt that it is within the competeney of the court so to advise, and that in such case it would be proper for the attorney-general to act in accordance with such advice. It is indispensable to a just and convenient administration of the criminal law that an extensive authority to regulate and control prosecutions should be lodged in the courts. It is not every indictment that should be tried, and sometimes the public welfare requires that even the guilty should be acquitted. Accordingly, it is the well-settled practice for the courts, both in England and in this country, to direct, when the occasion calls for it, the acquittal of an accomplice, so as to qualify him as a witness against his companions in crime. The books are full of precedents to this effect. In *Regina* v. *Owen,* 9 *Carr. & P.* 83, which was an indictment for a felony, it was proposed on the part of the prosecution that one of the prisoners should be acquitted before the case was gone into, as he was wanted as a witness against his associates; and upon this being opposed, Justice Williams, having conferred with Alderson, B., said: "I had little doubt as to the course I ought to take, and my learned brother entirely agrees with me that this is a matter of ordinary occurrence. In cases of this kind, the court, if it sees no cause to the contrary, is in the habit of relying on the discretion of the counsel who conduct the prosecution. I shall therefore, in this case, intrust it to the discretion of the counsel whether he will have the prisoner acquitted before the case is gone into or not. I think it almost of course." It will be observed that such authority far transcends that power which the court is now called on to exercise, inasmuch as an acquittal is, unlike a *nolle prosequi,* a bar to any further prosecution for the same offence. And I think it has been quite a common practice in this state for the court to assent to the abandonment of indictments against accomplices who have been witnesses; indeed, I do not know of any instance in which a recommendation to mercy has ever been sent to the pardoning power in behalf of a criminal who had been used as a witness, at the instance of the state, a circumstance which shows conclusively that it has been the

prevailing mode either to let the indictment drop, or for the court, with the assent of the prisoner, so to adjust its sentence as to supersede the necessity of a recommendation for a remission of the sentence of the law.   It seems to me that if, in this case, this prisoner should signify to this court his waiver of his claim to a judicial recommendation for mercy, and in lieu of such recommendation should declare his willingness to plead guilty of a lesser crime than that of murder in the first degree, it would be entirely consistent with legal principles and the ordinary course of procedure for this court, in its discretion and at the instance of the attorney-general, to sanction an acceptance of such plea.   Whether this course, or an acquittal at the trial, or a recommendation to mercy after conviction, or a resort to a *nolle prosequi* shall be adopted, is a question that addresses itself to the judgment of the court, in view of the circumstances and characteristics of the particular case.   That it is proper, in some cases, to abandon the prosecution against the accomplice is the doctrine exemplified in the case of *United States* v. *Lee*, 4 *McLean* 103.   The indictment in that case was for a capital offence, and the public prosecutor offered a motion to discharge an accomplice who had been admitted as a witness on the side of the government, but the court said that " the government is bound in honor, under the circumstances, to carry out the understanding or arrangement by which the witness testified, and admitted, in so doing, his own turpitude.   Public policy and the ends of justice require this of the court."   The result was that the court decided that if the district attorney should fail to enter a *nolle prosequi*, that the cause would be continued until a pardon could be applied for, but suggesting " that to discontinue the prosecution is the shorter and better mode." In Massachusetts, also, the modern English practice in this particular is recognized as prevailing, and, accordingly, in the case of *Commonwealth* v. *Knapp*, 10 *Pick.* 493, this language is used by the court: " The law touching approvement has not been adopted in Massachusetts, but instead of that the laws and the usage have been to admit persons as

witnesses for the state, and they are to be treated here, in regard to confessions, as witnesses for the crown are in the mother country." Indeed, so far is Mr. Bishop from thinking that it is not legitimate, according to the American practice, to abandon the prosecution in such cases, that he expressly says that in this country, " in most instances, the prosecuting officer declines to institute criminal proceedings against him; or, if proceedings have been begun, he simply discontinues them by a *nolle prosequi*, or other proper means." See, also, to the same purpose, 1 *Greenl. Ev.*, §§ 363, 379. The only dissent, in the least degree, from this general line of authorities, is the case of *Commonwealth v. Dabney*, 1 *Rob.* (*Va.*) 696, and this deviation is, in a great measure, to be accounted for by the existence of a statute that materially modified the subject. From my examination of the authorities, and from my knowledge of the course of practice, I am clearly of opinion, as I have already said, that it is entirely within the rightful province of this court to assent to and advise the entering of a *nolle prosequi* in a case of this kind, whenever the exigency of justice or the public convenience requires such course to be adopted.

As the subject, so far as the expression of judicial opinion is concerned, is a novel one in this state, I have thought it well to express my views with respect to the general principles by which it is regulated, and it will be perceived that my conclusions are as follows, to wit:

*First.* That if an accomplice be convicted after having been made a witness by the state, and received as such by the court, and after having made an ingenuous confession, that such accomplice has an equitable claim to a judicial recommendation to the mercy of the pardoning power, which cannot be withheld without a violation of an established rule of practice.

*Second.* Such a recommendation has been, without any known exception, hitherto effective in obtaining some remission of punishment.

*Third.* That instead of the foregoing course, it is competent for the court to order the accomplice to be acquitted at the

trial, for the purpose of qualifying him as a witness for the state, or to accept from the defendant a plea admitting guilt to such a degree as, in the opinion of the court, is requisite, or for the court to assent to the entering of a *nolle prosequi* by the attorney-general.

Such being deemed the practice and the scope of judicial authority, the only remaining matter for decision is with respect to the course that it is proper to take on the present occasion.

Upon full consideration of the nature and circumstances of the present case, the court has come to the conclusion to advise the attorney-general not to enter a *nolle prosequi*. The public faith was not pledged to the defendant, either by expression or implication, that protection to this measure would be extended to him. An implied promise on the part of the court to recommend him to the mercy of the Court of Pardons, is all that he can justly claim, and that pledge, if he should be convicted, will doubtless be redeemed. To what extent such recommendation will be efficacious, it will remain for the tribunal in which the constitution has placed the power to pardon, to decide. If the defendant should apply to be permitted to plead guilty to the crime of murder in the second degree, the court will listen to such application, and will then decide, when the matter is before it, what answer shall be given to such request. For the present, our decision is, that the prosecution should not be summarily dismissed.

NOTE.—A similar view to the above has just been expressed in the case of United States *v.* Ford, by the Supreme Court of the United States; opinion by Clifford, J. *See Albany Law Journal, April 26th*, 1879.