CHARLIE HENDERSON v. STATE.

185 So. 625.
Opinion Filed December 16, 1938.
Rehearing Denied January 24, 1939.

*Murrow & Hogan,* for Plaintiff in Error;

*George Couper Gibbs,* Attorney General, *Tyrus A. Norwood,* Assistant Attorney General, and *Murray W. Overstreet,* State Attorney, for the State.

CHAPMAN, J.—On March 15, 1938, Charlie Henderson was indicted by a grand jury of Orange County, Florida, for the crime of murder in the first degree. The indictment consists of thirteen different counts in varying form and manner charging Charlie Henderson, Robert Jennings, Gus McLeod, Jack Harvey and John Bennett with murder. The defendant Charlie Henderson was charged as principal in the first degree in every count except the fourth, which count charged John Bennett with the actual slaying. The indictment charges Charlie Henderson and the other four defendants with the unlawful killing of R. H. Smith in Orange County, Florida, on the 19th day of January, 1938.

On the 15th day of March, 1938, the defendants named in the indictment were arraigned and Charlie Henderson and John Bennett entered pleas of not guilty, while Robert Jennings, Jack Harvey and Gus McLeod filed pleas of guilty. John Bennett subsequently withdrew his plea of not guilty and entered a plea of guilty. The trial court entered an order of severance as to Charlie Henderson and John Bennett, and on the 15th day of March, 1938, Charlie Henderson was placed upon trial on the said indictment, and, after hearing all the testimony, argument of counsel for the State and defendant, and the charge of the court upon the law of the case, the jury on March 17, 1938, returned a verdict of guilty against Charlie Henderson of murder in the first degree. The trial court entered a judgment of guilty on the said verdict to the effect that he should be electrocuted until his death.

Counsel for Charlie Henderson on the 19th day of March, 1938, filed in the Circuit Court of Orange County, Florida, a motion for a new trial to the effect that: (a) the verdict was contrary to the evidence; (b) against the weight of the evidence; (c) contrary to law; and (e) the court erred in failing to charge the jury on the law of man-

slaughter, murder in the third degree, and murder in the second degree. While other grounds appear in the motion, it is unnecessary to consider the same. Likewise on the 24th day of March, 1938, an amended motion for a new trial, supported by affidavits, was filed. The amended motion and the affidavits in support thereof, broadly speaking, contradicted much of the testimony that was offered by the State during the progress of the trial of the cause. It is not claimed by the amended motion or the supporting affidavits that new evidence had been discovered or obtained. The amended motion for a new trial was filed on the 24th day of March, 1938, while the verdict of the jury was rendered on the 17th day of March, 1938. The time allowed by statute for filing a motion for a new trial is four days from the time of the rendition of the verdict.

The evidence in this case shows that the object of the murder was robbery. Charlie Henderson and the four defendants obtained an automobile and went to the place where it was the habit of the deceased to go or be at a given hour of the evening. Charlie Henderson was armed with a double barrel shot gun and John Bennett had a single barrel shot gun. When the deceased arrived at the expected scene, the defendants ordered him to halt and immediately thereafter the shooting began, and the defendant Charlie Henderson was seen to stand over the deceased with an iron pipe and strike him a number of blows. When the deceased was admitted to the hospital a short time thereafter it was found that his skull was crushed and that he was suffering from a shot gun wound in the lower part of the stomach, and died some four or five days thereafter, the cause of death being the crushing of the skull of R. H. Smith. The defendants named in the indictment were arrested and four of them were used as State witnesses against Charlie Henderson, along with other testimony.

While nine assignments of error are presented in the record for a reversal of the judgment appealed from, an examination of the brief for plaintiff in error shows an abandonment of some, and while the brief asks for a reversal of the judgment, it fails to give citations of authorities which would guide or support such a reversal, if ordered by this Court. Charlie Henderson will be referred to hereinafter as defendant as he appeared in the lower court.

It is contended that reversible error was committed by the trial court in failing or omitting to charge or instruct the jury upon (a) manslaughter; (b) murder in the third degree; (c) murder in the second degree. We have carefully examined the evidence and think or believe there is ample evidence to sustain the verdict, and while the charge of the court was limited to murder in the first degree, we think that the evidence fully justifies the charge and that no error was committed in failing or neglecting to charge the lesser degrees of murder.

We fail to find any merit in the assignment to the effect that the trial court erred in permitting or allowing the jury to have a form of verdict for murder in the first degree.

It is next contended that the testimony of defendant's accomplices, viz.: Robert Jennings, Gus McLeod, Jack Harvey and John Bennett, was incompetent and that the testimony of either of said accomplices was not admissible in evidence to establish the guilt of the defendant, because they traded their pleas of guilty to the State with the understanding that they would not be electrocuted, but would give testimony for the State against the defendant when placed upon trial, and that the trial court sanctioned, ratified and approved the said agreement so made between the State of Florida and the other four defendants filing pleas of guilty. This contention, in a manner, is supported by the record

only by bare inference, if that. This Court had before it a similar question in the case of Ingram v. Prescot, 111 Fla. 320, 149 So. 369, when it was said:

"From the earliest times, it has been found necessary for the detection and punishment of crime, for the state to resort to the criminals themselves for testimony with which to convict their confederates in crime. While such a course offers a premium to treachery, and sometimes permits the more guilty to escape, it tends to prevent and break up combinations, by making criminals suspicious of each other, and it often leads to the punishment of guilty persons who would otherwise escape. Therefore, on the ground of public policy, it has been uniformly held that a State may contract with a criminal for his exemption from prosecution if he shall honestly and fairly make a full disclosure of the crime, whether the party testified against is convicted, or not. L. R. A. 1918-A page 376. Note to the report of case of Faucett v. State, 10 Okla. Crim. Rep. 111, 134 Pac. 839, L. R. A. 1918-A page 372; Cameron v. State, 32 Tex. Crim. Rep. 180, 40 A. S. R. 763, and notes. Section 8311 C. G. L. 6017 R. G. S. sets up such a statutory agreement barring the State from prosecution in certain cases where the accused, without any agreement on his part, is compelled to give evidence in certain classes of cases.

"But it is generally held that such an agreement is not pleadable in bar of an adjudication of guilt, although it may affect the right of the court to enforce or to impose a sentence for the infliction of punishment. Cameron v. State, supra, (Texas); Newton v. State, 15 Fla. 610.

"Although it is universally conceded that the district attorney, or other public prosecutor may, with the consent of the court, enter into an agreement with an accomplice that if he will testify fully and fairly, in a prosecution against his accomplices in guilt, he shall not be prosecuted for the

same offense, and that if the accomplice performs on his part, he is entitled to such protection as the law affords, yet the weight of authority upholds the proposition that if such an agreement is made with the prosecuting attorney alone, without the consent or advice of the court, it is of no effect as a protection to the accomplice, if he is afterwards placed on trial in violation of that agreement. State v. Graham, 41 N. J. L. 15; 32 Am. Rep. 174; People v. Peter, 48 Cal. 251; People v. Bruzzo, 24 Cal. 41; United States v. Ford, 99 U. S. 594, 25 L. Ed. 399; Lindsay v. People, 63 N. Y. 143; Commonwealth v. Woodside, 105 Mass. 594; Wight v. Rindskopf, 43 Wis. 344."

We have given careful consideration to the entire record, heard arguments of counsel for the respective parties at the bar of this Court, read the briefs and the authorities cited therein have also been duly considered, but when the case is considered as an entirety, there can be no question whatsoever as to the guilt of the defendant. The testimony offered by the State fully supports the verdict of murder in the first degree. The trial court gave appropriate instructions to the jury as to the testimony of an accomplice, or accomplices. We think the law has been fully covered by the charge of the court on this particular question. The defendant's defense was an alibi supported largely by his relatives and close friends. It was within the province of the jury to weigh all the testimony. It has not been made to appear that the jury was controlled by passion or prejudice because the testimony fully supports the jury's findings. The defendant, after the robbery, had money and divided it among his accomplices. It was a brutal murder. There is no error shown by the record and therefore the judgment appealed from is hereby affirmed. It is so ordered.

Terrell, C. J., and Whitfield, and Buford, J. J., concur.

Brown, J., concurs specially.

Brown, J.—I have read this record carefully and I fail to find therein any basis for the contention that the court was a party to or sanctioned any agreement made with the co-defendants to the effect that if they would give testimony for the State against plaintiff in error upon the trial they would not themselves have imposed upon them capital punishment. I do not believe that any court should be a party to any such agreement, nor do I believe that the case of Ingraham v. Prescott, 111 Fla. 320, 149 So. 369 should be construed as sanctioning any such practice. Indeed the facts in that case did not make it necessary for the court to make any pronouncement on this question. Witness the following quotation from the opinion:

"It furthermore appears that there is ample ground in the record to support the circuit judge's evidence finding that instead of the State's attorney having entered into any such agreement as the accused relies on for immunity, that the defendant agreed to become a witness and did become a witness solely on his own responsibility and at his own risk, upon the possible assurance of the State's Attorney to defendant's counsel, Hon. Philip Beall, that because of the defendant's agreeing to testify, that he (Hon. L. L. Fabisinski, State Attorney) would insist only on a suspended sentence if the court would agree to that course.

"The record therefore makes out no cause in bar or preclusion of the enforcement of the sentence imposed, which appears to be otherwise valid and proper, therefore the petitioner must be, and he is hereby remanded to proper custody, there to abide by and perform the sentence imposed upon him," etc.

Where the State's Attorney has made any agreement of leniency to an accomplice provided he discloses and testifies to the facts of the case, this does not render such accomplice incompetent to testify; it only goes to the weight and credibility to be attached to his testimony. It is well settled that while the testimony of an accomplice is admissible, such testimony is not regarded with favor and should be closely scrutinized and received with caution. In 16 C. J. pages 694-695, it is said:

"Promise or Hope of Immunity. The fact that an accomplice testifies with the hope of securing immunity or after a promise of immunity or leniency given by the prosecution, by whom he is offered as a witness, is a matter which is proper to be considered as affecting his credibility. Accordingly the defense is entitled to show that no prosecution has been instituted against an accomplice used by the prosecution as a witness, that a *nolle prosequi* has been entered upon an indictment found against the witness, that the witness has been promised immunity, or even that he is testifying in the hope of escaping punishment for his participation in the crime. The defense also should be permitted to show whether the witness's expectation of a discharge from further prosecution depends upon the conviction of defendant. On the other hand, the prosecution may, when the issue as to a promise or a hope of immunity has been raised by defendant, show that no promise of favor was made to the witness."

In the notes to the above text, on page 695, the following appears:

"Reason for rule.—Even if no express promise of immunity is made, the accomplice may be led to believe by something in the conduct or speech or tone of voice of some one connected with the prosecution that nevertheless his testimony involving another in guilt with him will earn

him some consideration at the hands of those who control his fate. We are therefore clear that, even when all the positive evidence is against the proposition that any express promise has been made, it is competent to ask the accomplice, as affecting his credibility, whether he expects to have full punishment meted out to him. Even when the accomplice has nothing in the way of word or conduct from any one connected with the prosecution on which to build as assurance, he may have some expectation—leading all the way from a faint glimmer of hope to confident belief—that, if his testimony results in the conviction of another, he himself will reap some reward. One whose life he is swearing away has a right to discover if he can, by the admission of the accomplice himself, that his testimony is given under a hope of life which he cannot entertain unless he looks for indulgence." State v. Kent, 4 N. D. 577, 599, 62 NW 631, 27 L. R. A. 686.

- The only portion of the record which tends even slightly to bear out the argument for counsel for plaintiff in error as to some agreement having been made with these co-defendants by the State Attorney appears on page 138, wherein counsel for one of the co-defendants, John Bennett, stated that he would like to make a motion that the court enter an order impounding the testimony of said witness, and direct that the same should not be used in any trial of the witness for any offense for which said testimony would be pertinent or relevant or that has any bearing on the guilt or innocence of the witness in said trial. The Court then said:

- "Does the State wish to be heard?" and the State Attorney stated:

"I have no objection that I wish to make to it." Whereupon the court granted the motion.

While the testimony of the four co-defendants in this

case was rather synthetic and peculiar in some respects, being remarkably similar as to certain cardinal points, and yet in some details of it rather conflicting, doubtless due to their desire not to implicate themselves in the actual commission of the crime, but to show that Charlie Henderson was the real murderer, the fact remains that the jury, who had the witnesses before them, and had the opportunity to observe their demeanor on the stand, and the able and conscientious Judge, who had the same opportunity and who denied the original motion for a new trial, were in a better position to judge of the credibility of the testimony on the vital issues involved than are the members of this court, who have nothing before them but the cold printed record of the language used.

The amendment to the motion for new trial have given me some concern. The motion for new trial was filed and submitted on March 19th, two days after the verdict was rendered, and hence was within the four day period prescribed by the statute. The amendment to the motion for new trial was submitted on March 24th, five days after the motion for new trial was filed, and seven days after the verdict, but before the court had acted upon said motion. The court received and considered this amended motion, which course was quite appropriate under the circumstances, and I think the court had the power to do so under the case of Kirkland v. State, 70 Fla. 584, 70 So. 592 and Smith v. State, 117 Fla. 458, 158 So. 91. The amendment does not come within the letter of the language used in the opinions rendered in those cases, but I think it comes within the spirit thereof.

The amendment to the motion for new trial alleges that on March 23rd, John Bennett, one of the main witnesses who testified against the defendant, had admitted, in the presence of the two attorneys for the defendant and one

Bert Hansel, that he had testified falsely against Charlie Henderson, and that neither he nor Charlie Henderson had taken any part in the commission of the crime and that neither he nor Charlie Henderson was present at the time the deceased was killed.

Upon presentation of defendant's motion for a new trial and the amendment thereto before the Circuit Judge on April 8, 1938, John Bennett was called as a witness before the trial judge by counsel for the defendant, and he there denied that he had made any such statement and insisted that he had told the truth when he testified on the stand. Hansel, who was also examined, did not support the allegations of the amendment to the motion for new trial except on one point, and that was that John Bennett had stated in his presence, when counsel for defendant went to the jail to talk to Bennett, that he, Bennett, was not present when the deceased was killed, which was of course contrary to what he had stated on the stand. The testimony of Mr. Murrow, one of defendant's counsel, was also taken before the Circuit Judge, and his testimony fully supported the allegations in the amendment to the motion for new trial.

After this testimony was heard the record shows the following:

"THE COURT: Is that all of your testimony?

"MR. MURROW: Yes, sir.

"MR. OVERSTREET: The whole thing is whether or not newly discovered evidence would produce a different result on a new trial.

"THE COURT: I think it wouldn't. It is apparent to me the manner in which this matter was approached.

"MR. MURROW: If he told three different lies that goes to show that he did lie, and— ·

"THE COURT: He is only one of the four who testified.

"Mr. Murrow: But it shows there was collusion on the part of all of them to save their own lives.

"Mr. Overstreet: I don't think the evidence would show that."

The Circuit Judge, after the consideration of the motion for new trial and the amendment thereto, did, on April 8, 1938, during said term, deny the same, to which ruling the defendant excepted.

In Smith v. State, *supra,* this court, following previous cases, held that applications for a new trial upon the ground of newly discovered evidence are looked upon with distrust and disfavor by the courts, and that:

"Such applications are granted only under the following restrictions: 1. The evidence must have been discovered since the former trial. 2. The party must have used due diligence to procure it on the former trial. 3. It must be material to the issue. 4. It must go to the merits of the cause and not merely to impeach the character of a witness. 5. It must not be merely cumulative. 6. It must be such as ought to procure on another trial an opposite result on the merits."

In the case of Jones v. State, 35 Fla. 289, 17 So. 284, it was held that a new trial should not be granted merely to afford the defendant an opportunity to show that he had been informed by one Stripling that one of the State's witnesses had made statements to a named person which were in conflict with his testimony at the trial. The 4th headnote bearing on this question reads as follows:

"A new trial should not be granted merely to afford the defendant an opportunity to show that one of the State's witnesses has made statements inconsistent with his testimony at the trial."

But in a case there the State relied upon the uncor-

roborated testimony of one witness to prove a charge which is easy to make and hard to believe, and where the evidence on the trial showed that the alleged assault occurred while the prosecutrix was under the influence of intoxicating liquor imbibed by her at a general drinking party, such newly discovered evidence was most relevant and material, and it was error to overrule motion for a new trial. Childre v. State, 106 Fla. 334, 143 So. 309. See also Martin v. U. S. 17 Fed. (2d) 973. In 16 C. J. 1188 *et seq.*, it is said:

"A material error or misstatement in the testimony of a witness for the prosecution may constitute ground for a new trial. Where therefore it appears, that, on a new trial, the witness will change his testimony to such an extent as to render probable a different verdict, the new trial will be granted. But recantation by witnesses called on behalf of the prosecution does not necessarily entitle defendant to a new trial. The question whether a new trial shall be granted on this ground depends on all the circumstances of the case, including the testimony of the witnesses submitted on the motion for the new trial. Moreover, recanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true. Especially is this true where the recantation involves a confession of perjury. And a *fortiori*, under the rule that a new trial will not be granted on account of newly discovered evidence which tends merely to impeach the witnesses for the prosecution, the falsity of testimony given on the trial cannot, as a rule, be established by proof of statements made by the witness out of court, at variance with his testimony on the trial, whether such statements were made prior to the trial or thereafter. The same is true of discrepancies between the testimony on the trial in question and that given by the witness in the

proceedings. But where it appears from competent and satisfactory evidence that a witness for the prosecution has deliberately perjured himself and that without his testimony defendant would not have been convicted, a new trial will be granted. Usually a new trial will not be granted because of perjury on an immaterial issue or on a collateral issue, nor generally where the false testimony may be eliminated without depriving the verdict of sufficient evidentiary support."

As stated by the trial judge, there were three other material witnesses, also co-defendants, in the case, who had testified before the jury, and he was of the opinion that the testimony developed on the hearing of the amended motion for a new trial would not produce a different result if a new trial were granted.

A motion for a new trial is addressed to the sound judicial discretion of the trial court, and the presumption is that he exercised that discretion properly. And the general rule is that unless it clearly appears that the trial court abused its discretion, the action of the trial court will not be disturbed by the appellate court. In this connection, see 16 C. J. 1119-20.

I concur with the majority of the Court in holding that we would not be authorized to disturb the action of the Court in denying the amended motion.

TERRELL, C. J., and WHITFIELD and CHAPMAN, J. J., concur.

BUFORD, J., dissents in part.

BUFORD, J. (dissenting in part)—I cannot concur in the language used by Mr. Justice BROWN in his specially concurring opinion, as follows:

"I do not believe that any court should be a party to any such agreement, nor do I believe that the case of Ingraham

v. Prescott, 111 Fla. 320, 149 Sou. 369, should be construed as sanctioning any such practice."

It would be a dangerous precedent for this Court to adopt such a holding and would be contrary to the well established law.

To have the consent and approval of the trial court of the prosecuting attorney's contract with the accused for immunity is not only proper, but it is essential to have such consent and approval to give validity and binding force to the contract and to make it operate to protect the contracting accused. In Ingraham v. Prescott, 111 Fla. 320, 149 Sou. 369, we held·

"Although it is universally conceded that the district attorney, or other public prosecutor may, with the consent of the court, enter into an agreement with an accomplice that if he will testify fully and fairly, in a prosecution against his accomplice in guilt,· he shall not be prosecuted for the same offense, and that if the accomplice performs on his part, he is entitled to such protection as the law affords, yet the weight of authority upholds the proposition that if such an agreement is made with the prosecuting attorney alone, without the consent or advice of the court, it is of no effect as a protection to the accomplice, if he is afterwards placed on trial in violation of that agreement. State v. Graham, 41 N. J. L. 15; 32 Am. Rep. 174; People v. Peter, 48 Cal. 251; People v. Bruzzo, 24 Cal. 41; United States v. Ford, 99 U. S. 594, 25 L. Ed. 399; Lindsay v. People, 63 N. Y. 143; Commonwealth v. Woodside, 150 Mass. 594; Wight v. Rindskopf, 43 Wis. 344.

"And the practice is for the court to *nolle prosequi* and dismiss the prosecution by incorporating in the record of its judgment the reasons therefor, which remain a perpetual record of the defendant's self-confessed guilt, although the

punishment that might have been inflicted is withheld. See Camron v. State, 40 A. S. R. 763, *supra."*

, See also Lowe v. State, 111 Md.··1,·73 Atl. 637; Commonwealth v. St. John, 173 Mass. 566, 54 N. E. 452, 73 Am. St. Rep. 321.

The legal principle is recognized in the old case of People v. Whipple, 9 Cowen 707, in which it is said:

'So long as, by the policy of the law, accomplices are deemed competent witnesses against their fellows, so long must a discretion in regard to admitting them be vested somewhere or other in the government. It could not consistently with the nature of the power, ·or the course and character of judicial .proceedings be committed to the chief executive magistrate; nor could it with propriety be entrusted to the public prosecutor, or any other inferior ministerial officer of justice, because, strictly speaking, it·is the exercise of a high *judicial* discretion, and the reasons for vesting it in the court, rather than in the committing magistrate or even the public prosecutor, is that the admission of the party as a witness amounts to a promise *by the court* of a recommendation to mercy, upon condition of his making a full and fair disclosure of all the circumstances of the crime."

See also Ray v. State, 1 Green 316, 48 Am. Dec. 379.

So it appears that for more than one hundred years in this country it has been held to be proper for the trial court to be advised of agreements between the prosecuting attorney and accomplice whereby the accomplice proposes to give full and complete testimony concerning the offense for which he and others stand charged, in consideration of which the State agrees that it will not prosecute such accomplice further on that charge, and being so advised either to approve or disapprove of such contract and agreement between the State and the defendant.

The weight of authority appears to be that if the court approves the agreement, then upon the defendant carrying out his part of the agreement, it becomes the duty of the court to make an order on the record showing the conditions under which the accomplice testified and ordering his discharge from further prosecution.