LILES, Chief Judge.
The appellant-defendant, Patrick O’Brien, is appealing from a judgment entered pursuant to a jury verdict finding him guilty of buying stolen property.
Defendant was charged with violating Florida Statute § 811.16, F.S.A., which forbids the buying, receiving, or concealing of stolen property, knowing the same to have been stolen.
At trial the State presented evidence showing that Phillip David Jinks and Hiram McElroy broke into a home and stole a color television set. Jinks and McElroy sold this set to defendant O’Brien. O’Brien in turn sold the television set to a Mr. and Mrs. Suchan. At the trial, McElroy testified that he had not informed defendant that the set had been stolen, that to his knewledge defendant did not know that the set had been stolen, and that Jinks was not in the immediate presence of O’Brien or McElroy when the set was sold to defendant.
Jinks, who was on probation for a prior conviction of breaking and entering and who had been granted immunity from prosecution for stealing the television set in question, gave a different version. He testified that both he and McElroy told O’Brien that the set had been stolen. Jinks also testified that approximately an hour before the set was sold to defendant O’Brien, he, Jinks, had talked with O’Brien about buying television sets that had been stolen and that McElroy was not present during this conversation.
Apparently, Jinks’ testimony was the only evidence presented by the State showing that the defendant had knowledge that the set had been stolen. The conflicting testimony of Jinks and McElroy must have been a decisive factor in the jury’s deliberation since the jury returned to the courtroom after having been charged and requested that the testimony of McElroy and Jinks be read in its entirety. Following this they resumed their deliberation and within a *218 short time returned with a verdict finding defendant guilty as charged.
Shortly thereafter, Jinks went to the public defender’s office and recanted the testimony that he gave at trial. Under oath Jinks testified that he had lied at the trial and that he had never told defendant that the set had been stolen nor had he given defendant any reason to believe that it had been stolen. The assistant public defender then filed a motion for a new trial alleging, among other things, newly discovered evidence which consisted of an admission by a material witness, Jinks, that he had lied at trial.
Subsequent thereto, Jinks was subpoenaed by the assistant state attorney and he was again placed under oath and questioned about the veracity of the testimony he gave at trial. The record of this hearing shows that for the vast majority of time spent in the hearing Jinks affirmed the testimony he had given the assistant public defender —that is, that he had lied at trial. However, the record discloses that there was a short break in the proceeding. Following this break, Jinks reaffirmed that he had told the assistant public defender the truth and that he had lied at trial. Shortly thereafter, a discussion off the record ensued between Jinks and the assistant state attorney, following which Jinks, at the assistant state attorney’s prompting, agreed to read the transcript before proceeding further. Then, there was yet another break in the hearing following which the court reporter was summoned into the room and Jinks stated that he had told the truth at trial and that he had lied to the assistant public defender.[1]
At the hearing on defendant O’Brien’s motion for a new trial, Jinks stood by the testimony he had given at trial and acknowledged that he had lied at the public defender’s office and at the state attorney’s office for a major portion of the testimony given there. However, at this hearing, Jinks contradicted testimony he had given at trial concerning the alleged meeting he had with the defendant approximately one hour prior to the time Jinks and McElroy sold the television set to the defendant. The record of the hearing reveals the following:
“Q. All right. Do you recall being asked"'this’ question: ‘All right. Now, tell us of your conversation with O’Brien and who did the talking, you or McElroy? Answer: McElroy. McElroy’s known him for a long time. That is the first time I had been close enough to talk to him.’ Do you recall giving that statement and answer?
A. Yes, sir.
Q. It that a true statement or an incorrect statement?
A. That is true.
Q. That is true?
A. Yes.
Q. All right. If you testified contrary to that at the trial of this case, were you telling the truth during the trial of the case or are you telling the truth now?
A. Repeat the question. You talk too fast.
Q. All right. I will slow down a little bit for you. I will re-read the question to you: ‘All right. Now, tell us of your conversation with McElroy and who did the talking, you or McElroy ? Answer: —this is your answer to Mr. Thury’s question — McElroy. McElroy has *219 known him for a long time. That’s the first time I’ve ever seen him. Not the first time. The first time I had been close enough to talk to him.’ Is that statement true or correct?
It is true.
True or untrue?
That is true.
Now, if you testified contrary to this at the trial of the case, were you lying then or are you lying now, son?
I don’t remember that question be-asked before.
Q. All right.”
The trial court denied defendant’s motion for a new trial.
A reading of the record shows that Jinks’ testimony was crucial to the State’s case. As mentioned above, Jinks was the only witness offering testimony that defendant O’Brien knew that the television set had been stolen. Jinks’ testimony was contradicted by that of his accomplice, Mc-Elroy, who stated under oath that O’Brien did not know that the set had been stolen. The jury interrupted its deliberation and returned to the courtroom requesting that the testimony of Jinks and McElroy be read. Shortly thereafter, the jury returned with a finding of guilty.
From a reading of the records of the trial and the various hearings, it is impossible for this court to determine when Jinks was lying and when he was testifying truthfully. Furthermore, while acknowledging that the trial judge was present at the trial and at the hearing on defendant’s motion for a new trial, we believe it was similarly impossible for him to distinguish Jinks’ true statements from those that were false.[2]
As in this case where the testimony of a witness is crucial to the State’s case and where serious and significant aspersions are subsequently cast on the truth of that witness’ testimony, our court system would be less than fair if it did not grant the defendant a new trial. Therefore, we hold that the trial court abused its discretion in not granting defendant a new trial.
Realizing that this case may be tried again, we feel that we should pass upon another point raised by appellant.
In charging the jury the trial court gave the following instruction:
“ * * * If you find from the evidence beyond a reasonable doubt that the article listed in the Information was stolen from the complainant, Mr. McElroy, and the article was found in the possession of the defendants, or either of them, the unexplained possession thereof by the defendants may be regarded by you as some evidence that the defendants knew it was stolen. In such a case, gentlemen, the guilty knowledge, if any, of the accused does not follow as a presumption of law from the unexplained possession of the property recently stolen; that is to say, there is no conclusive presumption and you are not required to find that the person accused did have such knowledge. The presumption is one that the Jury may infer, as a matter of fact, of which you are the sole judges, and which is to be considered by you in connection with all of the other circumstances in the case.
*220 “The circumstance of one being- found in the unexplained possession of recently-stolen property is one which may be considered as showing a tendency toward guilt.
“The Court further charges you, gentlemen, that when a person who has been found in possession of goods recently stolen gives a reasonable and credible account of how he came into such possession, or such an account as will raise a reasonable doubt in the minds of the Jury, then it becomes the duty of the state to prove that such account is untrue, otherwise, you should acquit the defendants.
“However, the account given must not only be reasonable, but it must be credible or sufficiently so as to raise a reasonable doubt in the minds of the Jury, who are the sole judges of its reasonableness and probability as well as its credibility. The account given may be reasonable and highly plausible, and yet the Jury may not believe it to be true. In the latter case, the Jury would have the right to convict upon the evidence furnished by the possession of the stolen goods, even though the State had not put in any proof directly to prove the falsity of the account given.”
From the record of the trial it is clear that defendant O’Brien was never discovered in possession of the television set. Instead, the set was first found in the possession of Mr. and Mrs. Suchan. Thus, this instruction was completely inapplicable to the facts of the case[3] and would certainly tend to confuse and mislead the jury.[4] We find that under the facts of this case such an instruction was reversible error.
The judgment appealed from is reversed.
SHANNON and PIERCE, JJ., concur.

. Although no reason was given by Jinks for changing his story, it appears from the transcript of testimony taken at the hearing on defendant’s motion for a new trial that during one of the breaks at the hearing held in the state attorney’s office Jinks was informed that he could be charged with perjury and the perjury statute was read to him.

. At the hearing on defendant’s motion for a new trial, Jinks was asked: “Q. So, in fact, what you are saying, David, is that at times you have lied to the Public Defender, at times you have lied to the State’s Attorney, at times you have lied to the Probation Officer and at times you have lied to the Court, is that correct? A. Yes.”

. Ard v. State, Fla.1959, 108 So.2d 38; McClain v. State, Fla.App.1966, 185 So.2d 707; Romanello v. State, Fla.App.1964, 160 So.2d 529, cert. denied 381 U.S. 915, 85 S.Ct. 1541, 14 L.Ed.2d 436 (1965).

. The defendant has made a constitutional attack upon this instruction. However, due to our disposition of the case, we do not have to answer this question. See Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Jones v. State, Fla.App.1967, 200 So.2d 574.