374 So.2d 1022 (1979)
David P. MOLLICA, Appellant,
v.
STATE of Florida, Appellee.
No. 78-1756.
District Court of Appeal of Florida, Second District.
July 27, 1979.
Rehearing Denied September 17, 1979.
A.P. Gibbs of Gibbs & McAlvanah, P.A., Dade City, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Richard G. Pippinger, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
David P. Mollica appeals from his conviction for first degree murder, contending that the trial judge erred in failing to grant his motion for a new trial. The amended motion alleged newly discovered evidence in the form of recanted testimony by the sole, material prosecution witness. We hold that the denial of appellant's motion for new trial was proper and therefore affirm the final order.
Mollica and co-defendant Robert Ogden were convicted of the first degree murder *1023 of Donald Mills. A third defendant, Daniel Fortune, Sr., pled guilty to the same charge and testified against Mollica and Ogden at their trial in April, 1978. Fortune was the only eyewitness to the crime, and the trial court summarized his testimony as follows:
Mr. Fortune testified that robbery was the only motive for the murder. He also testified that Mr. Ogden suggested to him in the men's room at the Interstate Lounge in Tampa that they rob Donald Mills. Mr. Fortune testified that Mr. Mollica tacitly agreed to the robbery while sitting at a table in the Interstate Lounge in Tampa just a few minutes after his initial conversation about the robbery with Mr. Ogden. He testified that Mr. Ogden then drove the party in Mr. Ogden's car north on Interstate 75 into Pasco County on the pretext of looking for a bottle club. Mr. Ogden carefully located a secluded spot in the orange grove in Pasco County to set the stage for the robbery. According to his testimony, on the trip into Pasco County Mr. Ogden was driving the automobile, Mr. Fortune was sitting in the front passenger seat with Mr. Mollica directly behind him, and Mr. Mills in the left rear seat. Mr. Fortune testified that during the trip to the site of the murder that Mr. Mollica quietly passed Mr. Fortune's knife to him from the back seat. Mr. Fortune testified that before leaving the Interstate Lounge, but while not in the company of Mr. Mills, they discussed and organized the location of the knives to be used as implements to effect the robbery of Mr. Mills.
Mr. Fortune further testified that after he and perhaps Mr. Mollica had stabbed Mr. Mills numerous times and had incapacitated him, if not killed him, that they then dragged Mr. Mills some distance into the orange grove where Mr. Ogden went through his pockets removing his wallet, money, and jewelry.
On May 27, 1978, Fortune gave a written statement to Mollica's attorney recanting the substance of his trial testimony and exonerating Mollica and Ogden. Subsequently, Fortune wrote to an assistant state attorney recanting his written statement of May 27 and reaffirming his trial testimony. On June 15, Fortune gave a deposition under oath in which he again recanted his trial testimony. He stated at that time that he had implicated appellant at trial because he thought Mollica and Ogden had "ratted" on him at the initial police interrogation.
At the hearing on appellant's motion for new trial, Fortune denied the truth of his statements on May 27 and June 15 and reaffirmed his trial testimony with one exception. He stated that the victim, Donald Mills, had mentioned having sexual relations with Fortune's wife. This remark was made just prior to Mills' death. At trial, Fortune had denied that Mills made such a statement or that it was a motive for the killing. He also denied at trial that he told a cellmate, Ronnie Holly, that at least part of the reason he killed Mills was that Mills had been intimate with Fortune's wife. However, at the motion hearing, Fortune stated that he did not remember whether he had made that statement to Holly. Fortune claimed that his life had been threatened if he refused to recant his incriminating trial testimony. He further stated that if the case were tried again, he would reaffirm his original testimony except for the added element that the victim made a remark about previous relations with Fortune's wife.
The order denying motion for a new trial concluded with the following statement:
This court then finds that even if a new trial were granted, that testimony of the witness, Daniel C. Fortune, Sr., would not be changed sufficiently to render probable a different verdict as to David P. Mollica or Robert G. Ogden, nor would a change in his testimony at the first trial so as to make it conform with what he now admits to be the truth would have made any difference in that verdict as to David P. Mollica or Robert G. Ogden.
On this appeal appellant relies primarily on two earlier cases of this court. In O'Brien v. State, 206 So.2d 217 (Fla. 2d DCA 1968), the only witness for the prosecution *1024 who had implicated the defendant recanted his trial testimony following conviction. Later upon interrogation by the state attorney he reasserted the truth of his trial testimony. At the hearing on the motion for new trial he also reaffirmed his trial testimony but admitted that at times he had lied to everyone involved in the proceeding including the court. The trial court denied the motion for new trial. On appeal this court concluded that it was impossible for the trial judge to distinguish the witness' true statements from those that were false and held on grounds of fairness that the defendant should be granted a new trial.
In Solis v. State, 262 So.2d 9 (Fla. 2d DCA 1972), the defendant was convicted for unlawfully assaulting his eleven year old daughter while attempting a sexual act upon her. On a motion for new trial the daughter, who was the sole material prosecution witness, testified that she had lied at the trial. However, the trial judge concluded that her recanting testimony constituted a lie and denied the motion. In reversing the conviction and ordering a new trial, this court cited O'Brien and said:
[W]e are of the view that it is an abuse of discretion to deny a motion for new trial, which is a direct attack, when it is apparent to the trial judge at a hearing thereon that the sole material prosecution witness told under oath two conflicting stories relating to guilt, one at trial and the other thereafter. It is not within the province of the trial judge at that juncture to determine on which of the two occasions the witness was telling the truth. To do so would be preempting the function of a trial jury. Stated otherwise, the controlling point is that it cannot be said, as a matter of law, that a jury had to believe the first testimony and could not, as the trial judge undertook to do, believe the second if it were before them, or consider it at all as it might bear on a possible reasonable doubt concerning the truth of the first.
262 So.2d at 10-11 (footnotes omitted).
Thus it appears that in O'Brien and Solis we have adopted a rule which provides that where the sole material prosecution witness later gives a statement in conflict with his trial testimony, the trial court has no discretion in determining when the witness is telling the truth and must grant a motion for new trial. In so doing we may have adopted a rule unique to American jurisprudence. Certainly it flies in the face of how most other courts view recanting testimony. In an annotation at 158 A.L.R. 1062 (1945) entitled "Statements by a witness after criminal trial tending to show that his testimony was perjured, as ground for new trial," the general rule is stated on page 1063 as follows:
Cases decided subsequently to the original annotations support the statement therein made to the effect that as a general rule the court will not grant a new trial on statements made by a witness after a criminal trial tending to show that his testimony was perjured, whether the witness himself makes oath to the statement or not.
Moreover, we have discovered that the rule of O'Brien and Solis is in conflict with the pronouncement of our supreme court. In Bell v. State, 90 So.2d 704 (Fla. 1956), the sole issue was whether the trial judge erred in denying the defendants' motion for new trial based upon the affidavit of an accomplice that he had testified falsely against them at the trial. The testimony of the accomplice was the only direct evidence implicating the defendants, although there was circumstantial evidence against them.[1]Bell was different from O'Brien and Solis with respect to the fact that the accomplice had recanted his testimony once prior to the trial as well as having done so after the *1025 trial. Nevertheless, the force of the following statement from Bell cannot be overlooked.
The rule for our guidance in this situation was stated in Henderson v. State, 135 Fla. 548, 185 So. 625, 630, 120 A.L.R. 742, citing 16 C.J. 1188, et seq., as follows:
"`A material error or misstatement in the testimony of a witness for the prosecution may constitute ground for a new trial. Where therefore it appears, that, on a new trial, the witness will change his testimony to such an extent as to render probable a different verdict, the new trial will be granted. But recantation by witnesses called on behalf of the prosecution does not necessarily entitle defendant to a new trial. The question whether a new trial shall be granted on this ground depends on all the circumstances of the case, including the testimony of the witnesses submitted on the motion for the new trial. Moreover, recanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true. Especially is this true where the recantation involves a confession of perjury. * * *'" See, also, 24 C.J.S. Criminal Law, § 1454.
90 So.2d at 705. In affirming the conviction the supreme court concluded that the trial judge had not abused his discretion in denying the motion for new trial.
In Weston v. State, 351 So.2d 75 (Fla. 1st DCA 1977), our sister court relied upon Bell to affirm the denial of a motion for new trial predicated upon the recanting of the testimony of the victim of a sexual battery upon a person eleven years of age or younger. At the trial the young girl testified about the defendant's repeated sexual attacks upon her. Subsequent to the conviction, affidavits of the victim and her mother recanting the trial testimony of the victim were submitted in support of a motion for new trial. However, at the hearing the child reaffirmed her trial testimony and said that she had recanted because she didn't want the defendant to have to stay in jail and because the defendant had told her to tell them that he didn't do it. In affirming the conviction, the First District Court of Appeal said:
Appellant relies strongly upon the opinion of the Second District Court of Appeal in Solis v. State, 262 So.2d 9, 11 (Fla. 2nd DCA 1972), which states, in part:
"It is not within the province of the trial judge at that juncture to determine on which of the two occasions the witness was telling the truth. To do so would be preempting the function of a trial jury... ."
To any extent that Solis conflicts with our holding, we decline to follow Solis. Here, the minor victim testified unequivocally at trial as to her suffering the acts of sexual molestation on appellant's part. Her testimony recanting the affidavit given after appellant's conviction contained clear and logical reasons for making the written statements. The trial judge is commended for postponing the hearing until the key witness' testimony could be received rather than relying upon a cold written statement. The trial court properly exercised its responsibilities in denying the motion for new trial.[[2]]
351 So.2d at 77.
Even though the rule of O'Brien and Solis seems to conflict with Bell, the decisions reached in O'Brien and Solis may have been correct on their facts. But the facts of the instant case are not as compelling. For example, unlike Solis the recanting witness, Fortune, substantially reaffirmed his trial testimony at the hearing on the motion for new trial. Furthermore, unlike O'Brien, Fortune gave a creditable reason why he had earlier repudiated his trial testimony. Thus, in his order denying the motion for new trial the trial judge said:

*1026 At the hearing on motion for new trial, Daniel C. Fortune, Sr., explained his recanting statements of May 27 and June 15, 1978, by saying that he was in the same prison facility with Mollica and Ogden when he made those recanting statements, that had received numerous threats on his life from Mollica and Ogden and other prisoners unless he recanted his trial testimony about their involvement in the crime. He further said that he was intimidated by Mr. Mollica's counsel, Mr. Leonard Holton, and by the presence of Mollica at both statements. It appears that Mollica was not immediately present when Fortune wrote the first statement but was in the vicinity of Fortune and Holton, but that Mollica was present when Fortune gave the deposition June 15, 1978.
.....
This court finds that the witness, Fortune, has given a reasonable motive for making his recanting statements of May 27 and June 15, that is, being that he was afraid not to give those statements.
Insofar as Fortune now admits that the victim did make a remark about having previous sexual relations with Fortune's wife, the judge's order notes:
At the motion for new trial, Fortune said that if the case were tried again he would testify exactly as he had testified at the first trial, except that he would now admit that prior to being killed the victim, Donald Mills, had made some remark about previous sexual relations with Fortune's wife. However, Fortune reaffirmed at the hearing on the motion for a new trial and said that he would again testify at a new trial that the motive for killing Donald Mills was not out of any revenge for talking about Fortune's wife, but was in order to rob him.
.....
This court further finds that if a new trial were granted that the witness, Fortune's, testimony would be substantially the same as it was in the previous trial. This court further finds that those matters as to which witness, Fortune, now says he would testify differently do not substantially bear on the guilt or innocence of the Defendants, Mollica or Ogden and would not make any difference in the verdict rendered by a new jury nor would those statements have made any difference in the verdict of the jury which tried this case if Fortune had testified in line with what he now admits to be the truth about comments about the victim and relations with Fortune's wife.
In the final analysis, this is the kind of matter in which the trial court must have broad discretion. The proposition that an essential prosecution witness can later recant his testimony and automatically bring about a new trial is ominous. Therefore, to the extent expressed herein we hereby recede from O'Brien and Solis.
For us to look at this cold record and say that the result reached by the trial judge was "unfair" would do violence to established legal concepts. Where, as here, the trial judge has personally observed the recanting witness and has painstakingly set forth findings which the record supports, we will not disturb his conclusion.
AFFIRMED.
GRIMES, C.J., and HOBSON and DANAHY, JJ., concur.
NOTES
[1] The instant case falls in the same category. While Fortune's testimony constituted the only direct evidence against the appellant, there was some corroborating circumstantial evidence of his guilt. The record reflects that the appellant, Fortune, Ogden and the victim had been drinking together most of the evening in which the victim was murdered. The testimony further indicates that there were three sets of footprints leading out of the remote citrus grove where the body was found.
[2] In another context, the Third District Court of Appeal has also recognized the broad discretion which the trial court should be given in deciding whether to grant a new trial based upon the recantation of an important witness. Dade National Bank of Miami v. Kay, 131 So.2d 24 (Fla. 3d DCA 1961).