455 So.2d 488 (1984)
Steven Lawrence BORGESS, Appellant,
v.
STATE of Florida, Appellee.
No. AT-100.
District Court of Appeal of Florida, First District.
August 14, 1984.
Rehearing Denied October 2, 1984.
*489 Glenna Joyce Reeves, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., David P. Gauldin, Asst. Atty. Gen., for appellee.
WENTWORTH, Judge.
Appellant was charged and convicted on two counts of lewd and lascivious assault in violation of § 800.04, Florida Statutes, with consecutive sentences of 15 and 10 years. In this appeal, he contends that the trial court erred in denying his motion for new trial. We affirm but find that the issues raised by appellant warrant explanation.
The state's evidence at appellant's jury trial consisted primarily of the testimony of the two victims, appellant's ten year old stepdaughter[1] and her playmate who was visiting overnight. The two girls testified that they were playing in the bedroom when appellant came in, began tickling and wrestling with them, and then started rubbing them on their "private parts."
After the trial, appellant's ex-wife went to the office of appellant's attorney and told him that several weeks prior to trial her daughter had told her that she was "playing a game on her daddy" and that he had not really done anything to her. At the hearing on appellant's previously filed motion for new trial, defense counsel sought and was granted leave to amend the motion to include an allegation of newly discovered evidence. When the trial court discovered the nature of the new evidence, he appointed a guardian ad litem for appellant's stepdaughter and continued the hearing to a later date. The hearing on the motion for new trial was finally concluded several months later. At that time the child was placed on the stand and questioned *490 by defense counsel. He asked her if she remembered testifying at the trial and she said "no." He then asked her whether her father had ever touched her private parts, and again she answered "no." On cross examination the state attorney unsuccessfully attempted to refresh the child's memory of her trial testimony. Appellant's ex-wife then testified that after the trial she had voluntarily gone to defense counsel's office with the information of her daughter's pretrial recantation. She also testified that several weeks before trial, soon after she heard the statement, she had taken her daughter to the police station and the daughter had told the Springfield police that she was playing a game on her daddy. The motion for new trial based on newly discovered evidence was denied, and appellant raises two points on appeal.
First, appellant argues that the denial was an abuse of discretion because the recanted testimony probably would have changed the outcome of the trial. Appellant correctly points out that this is not a case where the witness recanted, then reaffirmed her trial testimony. See Weston v. State, 351 So.2d 75 (Fla. 1st DCA 1977); Mollica v. State, 374 So.2d 1022 (Fla. 2d DCA 1979). However, the standard for determining whether a new trial should be ordered on the basis of recanted testimony was set out in Henderson v. State, 136 Fla. 548, 185 So. 625 (1939), where the Court stated:
A material error or misstatement in the testimony of the witness for the prosecution may constitute ground for a new trial... But recantation by witnesses called on behalf of the prosecution does not necessarily entitle defendant to a new trial. The question of whether a new trial shall be granted on this ground depends on all the circumstances of the case, including the testimony of the witnesses submitted on the motion for the new trial. Moreover, recanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true.
Id. 185 So. at 630.
In this case, the trial judge was in the best position to evaluate the credibility of the child's conflicting stories, and we cannot conclude that he was required to find that the true version was the one told at the post trial hearing.[2] Since the court was not satisfied that the recanting testimony was true, the motion for new trial was properly denied.
Appellant next argues that the testimony of the victim's mother shows that the state failed to disclose evidence which was material and favorable to the defense in violation of Fla.R.Crim.P. 3.220 and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). While the statement in question apparently rises to the degree of materiality requiring disclosure under Brady and its progeny, we cannot, from the present record, determine whether or not a Brady violation in fact occurred. We have only the mother's testimony that her daughter made the statement to the Springfield police prior to trial. There are no specifics in this record pertaining to the circumstances of the report, because defense counsel never apprised the trial judge of the possibility of a Brady violation. On the contrary, each time the witness referred to the pretrial trip to the police station, defense counsel either ignored the testimony or actively attempted to cut the answer short.[3]
*491 Thus, there has never been a factual determination that a Brady violation occurred, and the state has not had an opportunity to rebut the allegation before a proper finder of fact. This court will not, of course, make initial factual determinations, and we therefore will not reverse on the basis of the alleged Brady violation. Cf., Delmarco v. State, 406 So.2d 1169 (Fla. 1st DCA 1981). However, our affirmance is without prejudice to the right to raise the issue of a Brady violation in conjunction with any allegation of ineffective assistance of counsel pursuant to Fla.R.Crim.P. 3.850.
Affirmed.
BOOTH, J., concurs.
ERVIN, C.J., specially concurs, with opinion.
ERVIN, Chief Judge, specially concurring.
I concur without reservation as to the second point raised in that it appears that the asserted Brady violation was not brought to the attention of the lower court. The first point raised  whether the trial court abused its discretion in denying the motion for new trial, presented on the ground of newly discovered evidence  is far more troubling. This is an issue which in the past has been met with mixed results. The usual rule, as stated by the majority, quoting from Henderson v. State, 135 Fla. 548, 185 So. 625, 630 (1939), is that the granting of a new trial depends upon all of the circumstances of the case. Accord, Bell v. State, 90 So.2d 704 (Fla. 1956). A more recent variation of the rule is that in deciding whether a motion for new trial should be granted for the reason of newly discovered evidence, the trial judge is required to weigh both the evidence presented at the trial and the evidence offered on the motion in order to determine whether the evidence, if it had been introduced at trial, would probably have changed the jury's verdict. Jent v. State, 408 So.2d 1024 (Fla. 1981). In making this determination the trial judge is allowed broad discretion.
Notwithstanding the rule announced in Henderson v. State, the Second District Court of Appeal in Solis v. State, 262 So.2d 9 (Fla. 2d DCA 1972), following its earlier opinion in O'Brien v. State, 206 So.2d 217 (Fla. 2d DCA 1968), opted in favor of an automatic grant of new trial on circumstances *492 disclosing that the sole material prosecuting witness had recanted her testimony following trial, stating: "It is not within the province of the trial judge at that juncture [at hearing on motion for new trial] to determine on which of the two occasions the witness was telling the truth. To do so would be preempting the function of a trial jury." Id. at 1011. This court, in Weston v. State, 351 So.2d 75 (Fla. 1st DCA 1977), declined to follow Solis. Yet, as pointed out by the majority, the facts in Weston are distinguishable from those before us in that the witness there recanted, then reaffirmed her trial testimony. Later, the Second District Court of Appeal in Mollica v. State, 374 So.2d 1022 (Fla. 2d DCA 1979) receded from its former opinions in Solis and O'Brien, reaffirming the traditional rule holding that such issues are the kind in which the trial court should be accorded broad discretion, after determining all of the circumstances of the case.
The facts in the present case are closer to those in Solis in that one of the two victims not only recanted, but, after being advised of the consequences of perjury, also adhered to her recanting testimony. If the conviction of the appellant depended solely on the testimony of the minor prosecuting witness, I would be inclined to the view that a denial of a motion for new trial would constitute an abuse of discretion under the circumstances presented. Yet, there was a second victim who neither recanted her testimony, nor maintained close family ties with the defendant. Her testimony paralleled and indeed corroborated much of the other witness's trial testimony. Given this additional evidence I am unprepared to say that the court's denial of the motion was an abuse of discretion.
This case is admittedly a troubling one and I thoroughly agree with the Third District Court of Appeal's observation in Hanson v. State, 187 So.2d 54, 55 (Fla. 3d DCA 1966), recognizing that "it is better to bend a rule of procedure than to use the rule to convict an innocent person... ." See also Jackson v. State, 416 So.2d 10 (Fla. 3d DCA 1982). Nevertheless, because of the distinguishing facts in this case, I concur with the majority in affirming the denial of the motion for new trial.
NOTES
[1] Appellant and the victim's mother were divorced at the time of the incident, but appellant was staying with his ex-wife for a few days because, as she testified, they were still good friends. The transcript also showed that the victim thought of appellant as her father, rather than as her stepfather.
[2] Our review of the transcript shows that the victim's trial testimony was precise and specific, but her testimony at the hearing on motion for new trial was hesitant and reluctant. Thus, even without the trial court's inherent advantage in being able to personally observe the candor and demeanor of the witness, the record supports the finding that she was telling the truth during the trial rather than after.
[3] The following excerpts from the transcript of the hearing on the motion for new trial demonstrate defense counsel's apparent failure to recognize the significance of the mother's testimony that the statement was reported to the police prior to trial:

Q. Now, Mrs. Borgess, let me ask you this, after your husband, Mr. Borgess was convicted in September 30th, there I believe 1982, did you or did you and your daughter or both of you come to my office?
A. Yes, we did.
Q. Under what circumstances did you come to my office?
A. Well, I had made that statement, I mean, she had made the statement it weren't so. So I went ...
Q. She is who?
A. My daughter.
Q. You are talking about [your daughter]?
A. Yeah, [she] had made the statement that she was playing a game on her Daddy. So we had went to the Springfield police because I couldn't get up town, of course, and we ...
Q. My question was ...
A. I'm telling you why I went to your office.
Q. Okay.
A. If it is all right.
Q. Go ahead but don't stray too far. Let's just ...
A. I went to tell you the same thing I had ...
Q. You went to my office then freely and voluntarily?
A. Yes.
Q. To talk to me about the case.
A. To talk about the case.
......
Q. In other words, you just, this was her imagination or do you understand why she's made the statement she did in court?
A. I have no idea why she made the statement in the first place and I don't know why she made the second one.
Q. In other words, you didn't induce her in any way or coerce her or threaten her or ...
A. In fact ...
Q. Promise her anything to say that she made this up, I did not tell the truth and, you know, I want to change and now I want to tell the truth; is what I'm asking you?
A. No, sir, it was just as much surprise to me as anybody. She just fell down on the floor on the footstool and started crying and admitted this what she said about making it a game and, of course, naturally when she said that I had my doubts that it weren't so, you know. And I carried her back to the investigations office to make that statement that she made to me. But I hadn't mentioned it to her.
Q. I'm asking you though you hadn't threatened her or promised her or anything of that nature?
A. No, sir.