660 So.2d 1363 (1995)
Joseph Robert SPAZIANO, Appellant,
v.
STATE of Florida, Appellee.
No. 67929.
Supreme Court of Florida.
September 8, 1995.
As Modified September 12, 1995.
*1364 Michael A. Mello, South Royalton, VT, for appellant.
Robert A. Butterworth, Attorney General and Margene A. Roper, Assistant Attorney General, Daytona Beach, for appellee.
PER CURIAM.
Joseph Robert Spaziano, through his counsel Michael A. Mello, has filed multiple motions and documents following the Governor's signing of a fifth death warrant for Spaziano on August 4, 1995. The motions fall into five distinct categories: (1) two motions for rehearing; (2) four motions to supplement the record; (3) two motions addressing actions by the office of the attorney general; (4) two motions relating to Mello's representation of Spaziano; and (5) one catch-all motion concerning Spaziano's rights.
The two principal motions are (1) an out-of-time motion for rehearing of a previous Florida Rule of Criminal Procedure 3.850 motion, which was denied in the circuit court in 1985 and affirmed by this Court in 1986; and (2) an out-of-time motion for rehearing of the direct appeal and judgment on the sufficiency of the evidence. To further these two motions, Mello filed four additional motions to supplement the record, including: (a) motion to supplement the record to include a videotape; (b) motion to supplement the record to include recent media coverage of this case; (c) motion to supplement the record with media coverage of the Florida Department of Law Enforcement investigation; and (d) motion to supplement the record with an unofficial transcript of the Florida Department of Law Enforcement's interrogation of Anthony DiLisio. Subsequent to oral argument, Mello filed an affidavit executed under oath by Anthony Frank DiLisio, a primary witness for the prosecution, which states:
KNOW ALL MEN BY THESE PRESENTS, that I, Anthony Frank DiLisio, of ... Pensacola, Florida 32534, do make, publish and declare freely, under penalty of perjury, this statement that I never under any circumstances went to the dump sight [sic] with Joseph Spaziano. I went there in the company of law enforcement investigators and only in the company of law enforcement investigators.
At trial, DiLisio testified that Spaziano took him to a dump and showed him the bodies of two females, and explained the specific route that Spaziano and DeLisio took to the dump.
In the aggregate, the motions filed seek to open by rehearing an appeal that was finalized more than thirteen years ago and a postconviction proceeding that was terminated with a denial of rehearing more than nine years ago.
*1365 Counsel has stated that the motions he has filed are not authorized in our present legal process. He states:
Undersigned counsel candidly concedes that a plethora of procedural preclusions articulated by this court bar this instant action. As a motion [for] rehearing of an opinion by this court rendered in 1986, this motion is obviously untimely. Treated as a new claim for postconviction relief, this action is barred by the one year time limit on Rule 3.851 motions. There are claim and issue preclusion barriers, because all of the legal issues raised in this motion have been raised by Mr. Spaziano in the past; there has been no intervening change in law; there have been new facts recently discovered, but they may not be of the magnitude necessary, under this court's [precedents], to secure review. Finally, retroactivity principles bar this court from treating several aspects raised by Mr. Spaziano as issues cognizable at this time.
There are methods for the court to consider both newly discovered evidence and recanted testimony under procedures we have established in this State. With regard to newly discovered evidence, we recently broadened the test to allow a new trial when evidence would "probably" affect the verdict rather than requiring that it must "conclusively" affect the verdict. Jones v. State, 591 So.2d 911 (Fla. 1991). With regard to the issue of recanted testimony, we have set out the standards for this type of situation in our recent decision in Armstrong v. State, 642 So.2d 730 (Fla. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1799, 131 L.Ed.2d 726 (1995).[1] Spaziano has been before this Court on seven prior occasions;[2] he has been before the United States District Court[3] and before the United States Court of Appeals,[4] which wrote an extensive opinion examining the twenty-three issues raised before the United States District Court. The United States Supreme Court has considered his case on the merits[5] and has denied petitions for writs of certiorari on three occasions.
The motions for rehearing filed in this cause are clearly not authorized. However, consistent with our constitutional responsibility to refrain from dismissing a cause solely because an improper remedy has been sought, we have considered the contents of these motions and the recently filed supplemental affidavit to determine whether they have any basis for relief under our jurisdiction. Under the unique circumstances of this cause, we conclude that these two out-of-time motions for rehearing, together with the supplemental affidavit of Anthony DiLisio, should be treated as a successive Rules of Criminal Procedure 3.850-3.851 motion based only on the newly discovered *1366 evidence of the recantation of the testimony of a significant witness, and the motion must be remanded to the Circuit Court of the Eighteenth Judicial Circuit for consideration of that issue. Given this finding, we conclude that the State should be allowed to respond to this narrow issue by 5 p.m. on Wednesday, September 13, 1995. Further, the trial judge to whom this cause is assigned is directed to hold an evidentiary hearing on the issue of the recanted testimony as newly discovered evidence no later than Friday, September 15, 1995. We decline at this time to grant a stay of execution, but allow the trial court an opportunity to address that issue.
We further find that the motions to supplement the record with newspaper articles are clearly unauthorized and improper, and they are all stricken from the record in this proceeding.
Further, Spaziano has moved to disqualify the office of the attorney general and compel discovery from that same office. Both motions are denied as being without merit.
Spaziano's counsel, Mello, has also filed motions concerning his representation of Spaziano, specifically: (1) motion for appointment of counsel nunc pro tunc, and (2) motion to consider and decide whether pro bono counsel is obligated to move for withdrawal as counsel in this case. The office of the Capital Collateral Representative (CCR) represented Spaziano until at least January of this year. In June 1995, it appears that Mello voluntarily undertook the representation of Spaziano. We note that this is not a new case for Mello since he represented Spaziano while Mello was employed with CCR. This is still, in our view, a CCR case, and CCR has the primary responsibility for this representation. We find that the Capital Collateral Representative orally argued the latest proceeding in this matter before the United States Court of Appeals for the Eleventh Circuit in 1994. We find that these motions are not proper under the particular circumstances of this case. We find that Mello may continue the representation with assistance from CCR and, if possible, with the assistance of any resources available from the Volunteer Lawyers' Resource Center.[6] We deny Spaziano's catch-all motion requesting us to compel release of the Florida Department of Law Enforcement investigation report, to hold an evidentiary hearing on that matter, to enter a stay of execution, or to alter our reading of the public records law.[7] We also deny the amicus Volunteer Lawyers' Resource Center's motion for a stay in this cause.
For the reasons expressed, we remand this cause to the Circuit Court of the Eighteenth Judicial Circuit for an evidentiary hearing on the issue of the recanted testimony.
It is so ordered.
GRIMES, C.J., and OVERTON, HARDING and WELLS, JJ., concur.
KOGAN, J., concurs in part and dissents in part with an opinion, in which SHAW and ANSTEAD, JJ., concur.
KOGAN, Justice, concurring in part, dissenting in part.
I agree with virtually all that is said in the majority opinion except that portion imposing an unrealistic time frame for resolving what we all have now agreed is a cognizable claim for postconviction relief. Such a restriction is without precedent in our case law and tends to create an atmosphere of panic for resolution of an issue that requires calm and deliberate resolution.[8] Indeed, this is an issue demanding the most careful of attention because its end result could be the state-sponsored taking of a man's life when his guilt now has been called into question.
*1367 As the United States Supreme Court itself has noted, "death is different." Gregg v. Georgia, 428 U.S. 153, 188, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976). Unique in its finality, the death penalty therefore is circumscribed by extraordinary procedural safeguards designed to prevent an arbitrary or capricious application of this most irrevocable of punishments. I cannot see how this core policy is being served by an unseemly rush to execute a man despite a sworn affidavit by the State's chief witness that Mr. Spaziano was convicted on falsified evidence.[9] This conclusion is all the more compelling here because the recantation is only the latest in a string of troubling doubts that have surrounded Mr. Spaziano's conviction from the outset, revealing it to be a text-book example of how capital trials and postconviction reviews should not be conducted.
Today we are presented with a grossly disturbing scenario: a man facing imminent execution (a) even though his jury's vote for life imprisonment would be legally binding today, Cochran v. State, 547 So.2d 928 (Fla. 1989), (b) with his conviction resting almost entirely on testimony tainted by a hypnotic procedure this Court has condemned, Bundy v. State, 471 So.2d 9, 18 (Fla. 1985), cert. denied 479 U.S. 894, 107 S.Ct. 295, 93 L.Ed.2d 269 (1986), (c) with the source of that tainted testimony now swearing on penalty of perjury that his testimony was false, and (d) without a careful consideration of this newly discovered evidence under the only legal method available, Rule of Criminal Procedure 3.850 or 3.851.[10]
While each of these standing alone is cause for grave concern, the apparent recantation of the State's chief witness is by far the most disturbing. The role played by this witness was vividly explained by this Court's own words on direct appeal:
[T]he principal witness for the state was Ralph Dilisio [sic], a sixteen-year-old acquaintance of the appellant. Dilisio testified that Spaziano often bragged about the girls he had mutilated and killed, and on the occasion Dilisio and another individual accompanied the appellant to the Altamonte dump site where Dilisio saw two corpses, both covered with blood. Dilisio stated that Spaziano claimed responsibility for these killings[.]
....
With reference to the contention that the evidence is insufficient, the appellant asks us to reject in totality the testimony of Dilisio. Dilisio led authorities to the dump where the bodies were found two years after he observed them with the appellant. Both the jury and the trial judge had a superior vantage point to weigh the credibility of Dilisio's testimony. We find the evidence in this record was sufficient to sustain the jury's verdict.
Spaziano v. State, 393 So.2d 1119, 1120 & 1122 (Fla. 1981). I think this excerpt more than amply refutes any claim that Spaziano's conviction is adequately supported by evidence apart from DiLisio's testimony. Were that the case, this Court in 1981 would hardly have pegged its entire analysis of the evidence's sufficiency on DiLisio's credibility. And today, when the credibility of that testimony has been called into question in the strongest possible manner  from DiLisio's own mouth  I think there is only one reasonable conclusion: This conviction bears a possible taint that must be investigated and explained before Spaziano can be electrocuted.
In oral argument, the State made much of the "speculative" nature of allegations before us. While there certainly may be elements of speculation in what we are reviewing here, I am not at all satisfied the entire claim is groundless. DiLisio's affidavit alone tends to refute that contention. And in any event, it is the trial court's responsibility as fact-finder to weed out the speculative from the meritorious, not ours. Our sole duty at this point is to determine if a prima facie claim has been made, which it clearly has.
More to the point, we are talking about a man's life here. And in that sense, we also are talking about the moral underpinnings of the death penalty itself: an abiding faithfulness *1368 to heightened procedural safeguards, an absolute requirement of the certainty of guilt, and an overriding commitment to the proposition that society should never descend into lawlessness in an effort to eliminate the lawless. Ends do not justify means. Quite to the contrary, the means chosen almost always color and shape the ends achieved. This is true even when we are talking about someone like Mr. Spaziano, whose life has hardly been a model. One question is at issue here, and one question alone: Was Mr. Spaziano lawfully convicted of the murder of Laura Harberts?
All that can be said with finality about this case today is that it remains mired in serious doubt. Because of the irrevocable nature of the death penalty, I am utterly unwilling to dismiss those doubts without adequate inquiry into their source. The present record presents at least a prima facie showing that the State's chief witness has recanted, and I thus agree that the trial court must review the claim presented here pursuant to Rule 3.850 or 3.851. Any other ruling would countenance an execution in the face of serious evidence that Mr. Spaziano was illegally convicted.
Because of the seriousness of the claim, I further believe this Court should enter an indefinite stay of execution to permit the parties to develop their cases without facing the pressures of an active death warrant, if the Governor does not stay or withdraw his warrant in light of our opinion today. Experience teaches that claims of this magnitude cannot be fully investigated nor a case prepared in one week. In any event, if the majority's time table proves inadequate, counsel clearly still has the ability to seek a stay from the trial court or this Court at a later time.
Finally, as the majority indicates, the Office of Capital Collateral Representative continues to be statutorily responsible for this case. Therefore, it must at least provide volunteer counsel with the usual resources that would be available in a typical case handled by that agency.[11]
SHAW and ANSTEAD, JJ., concur.
On September 8, 1995, we issued an opinion directing that the trial court hold an evidentiary hearing in this cause by September 15, 1995, to examine the recantation of specific trial testimony. In that opinion, we directed that the Capital Collateral Representative (CCR) was to retain primary responsibility for Joseph Robert Spaziano's representation in this case. After our opinion issued, a total of seven motions were filed by Michael A. Mello and CCR. Mello filed: (1) Motion for Rehearing and Reconsideration and Stay of Execution;[1] (2) Application for Stay of Execution; and (3) Motion to Hold Evidentiary Hearing in Abeyance. CCR filed: (4) Petition for Extraordinary Relief; (5) Petition for a Stay of Execution; (6) Petition for a Continuance of Evidentiary Hearing Ordered in Spaziano v. State, 660 So.2d 1363 (Fla. 1995); and (7) Petition for an Evidentiary Hearing Regarding Spaziano's Representation. Most of these motions stem from continuing confusion concerning the representation of Spaziano.
We address three primary issues. First, we revisit the question of primary responsibility for Spaziano's postconviction relief proceedings. Second, we confront whether an indefinite stay of execution is warranted by the lack of cooperation between CCR and Mello. Third, we again define the scope of the evidentiary hearing.

Representation of Spaziano
In our September 8, 1995, opinion, we specifically stated that CCR has primary responsibility for Spaziano's postconviction relief proceedings. Furthermore, we declined to appoint Mello, nunc pro tunc, as Spaziano's counsel. In rendering that decision, this Court unanimously rejected Mello's assertions that a conflict existed in CCR's representation of Spaziano. Additionally, when we issued that opinion, we envisioned a spirit of cooperation between CCR and Mello that *1369 would guarantee the best representation for Spaziano. Unfortunately, the events of this past weekend make it clear that such cooperation does not exist. Indeed, Mello has not accepted our findings or conclusions. He states:
The court should be aware that counsel shall not follow the court's unreasonable commands... .
....
... . Nor will I accept as "co-counsel" a law firm with interests adverse to my client's  a law firm my client has rejected for very good reasons.
Specifically, the court should know that (1) I will participate in no evidentiary hearing under warrant; (2) neither Mr. Spaziano nor I will accept CCR as co-counsel in this case, since CCR refused to serve as co-counsel when I asked them to do so in June; (3) counsel lacks the funds to return to Florida for purposes of any further court proceedings, as counsel's few remaining personal funds were spent to attend this court's 30 minute oral argument.
Mello also states:
CCR has none of the 25 bankers' boxes of files in this case. Nor will CCR ever have those files, as CCR will never have the cooperation or acquiescence of Mr. Spaziano.
Finally, Mello provides this court with his correspondence with CCR, which reads in part:
I told you that CCR is not Mr. Spaziano's lawyer, and that CCR will never be Joe's counsel. I explained why neither Joe nor his family trust CCR to represent his interests.
I trust that CCR will not (1) hold itself out as Joe's attorney, against the express wishes of him and his family, or (2) attempt to interfere with my attorney/client relationship with Mr. Spaziano by communicating in any manner with my client or with his family.
Finally, I trust that CCR will resist all efforts to "represent" him at the evidentiary hearing.
In summary, during the course of the last four weeks, Mello has (1) sought appointment as Spaziano's counsel nunc pro tunc to attempt to have this Court direct payment of attorney's fees and expenses; (2) suggested that he should withdraw because of a lack of resources; (3) stated that he is an appellate lawyer and not competent to represent Spaziano at an evidentiary hearing; (4) advised CCR, as noted, that Spaziano is his client and directed CCR not to interfere with his attorney-client relationship; and (5) stated that he will not appear at the evidentiary hearing ordered by this Court.
The fair administration of justice in Florida cannot proceed with such flagrant disregard of this Court's procedures and directions. In view of Mello's actions, including his refusal to abide by this Court's directions, his statement that he is not competent to handle an evidentiary hearing at the trial level, and his express refusal to appear at the evidentiary hearing ordered by this Court, we find that he has effectively withdrawn from representing Spaziano. Because Mello concededly has neither the resources nor the necessary trial experience, we find that he is not competent to continue this representation. To avoid any more unnecessary delays, we expressly direct that the files in his custody be immediately delivered to CCR. In the event that other volunteer counsel is obtained, we envision no problems in having CCR turn over those files to the new attorney.
In making this ruling, we are fully aware that Spaziano's family has expressed a desire that Mello remain as Spaziano's counsel. We also note that Spaziano has personally expressed that he does not want CCR's representation:
As my attorney told you, CCR is not my lawyer. I do not want CCR to represent me in any hearing. As my attorney Michael Mello has told you, do not try to see me or write to me again. I only want to speak through my attorney Michael Mello, who has been my lawyer for a long time. It can't be fair to go to court with a lawyer who doesn't know my case.
While cognizant of these wishes, we refuse to endorse or allow Mello's representation to continue when that representation would, admittedly, be less than adequate.
The United States Supreme Court has stated that no constitutional right requires *1370 states to appoint counsel for indigent death row inmates seeking state postconviction relief. Murray v. Giarratano, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989). Nevertheless, the State of Florida has provided for a Capital Collateral Representative under section 27.702, Florida Statutes (1993), to ensure that death row inmates have representation in post conviction relief proceedings. Section 27.702(1) provides:
The capital collateral representative shall represent, without additional compensation, any person convicted and sentenced to death in this state who is without counsel and who is unable to secure counsel due to his indigency or determined by a state court of competent jurisdiction to be indigent for the purpose of instituting and prosecuting collateral actions challenging the legality of the judgment and sentence imposed against such person in the state courts, federal courts in this state, the United States Court of Appeals for the Eleventh Circuit, and the United States Supreme Court.
CCR has represented Spaziano since his initial appeal became final and, in fact, Mello was one of the assistant CCR attorneys who represented Spaziano initially. Clearly, no constitutional right exists for a defendant to choose a particular court-appointed counsel. Jones v. State, 612 So.2d 1370 (Fla. 1992), cert. denied, ___ U.S. ___, 114 S.Ct. 112, 126 L.Ed.2d 78 (1993); Hardwick v. State, 521 So.2d 1071 (Fla. 1988), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988). We once again state that, on this record, no legal or ethical conflict exists which would prohibit CCR from representing Spaziano in this matter.
Spaziano is an indigent inmate. Spaziano has previously requested that this court address the issue of investigation costs and legal fees for his postconviction relief proceedings. We attempted to provide for both Spaziano's wishes and rights in our September 8, 1995, opinion. CCR and Mello were to work together to ensure adequate counsel and resources. That solution was intended to satisfy both Spaziano's wishes and his need for effective counsel. This past weekend's events have made it clear that a choice must now be made. Under the present circumstances, we direct that CCR shall act as Spaziano's counsel without Mello's assistance or interference.
Spaziano is faced with a choice. He may be represented at the evidentiary hearing by CCR or by competent volunteer counsel who will comply with rules and directions of this Court at no expense to the State, or he may choose to have no counsel at the evidentiary hearing. It is his decision. See, e.g., Hardwick, 521 So.2d at 1074 (one who attempts to dismiss court-appointed counsel is presumed to be exercising the right to self-representation). Any further proceeding relating to Spaziano's representation is remanded to the trial court, including any issue concerning Spaziano's right to represent himself.
This cause will proceed as indicated by this Court and by the trial judge assigned to this matter. The processes governing this case will not be, in any way, controlled by counsel for the State or Spaziano.

Motion of the Capital Collateral Representative
CCR has filed a motion that states its willingness to proceed in this cause but, because of Mello's refusal to cooperate, it is presently unprepared to represent Spaziano on such short notice. We find that, under the circumstances, we have no choice but to grant a stay of execution to provide CCR additional time for the evidentiary hearing. Accordingly, we modify our September 8, 1995, opinion by directing that an evidentiary hearing be commenced on or before November 15, 1995.

Scope of Evidentiary Hearing
Finally, CCR asks that we broaden the scope of the evidentiary hearing. In our September 8 opinion, we limited the scope of the evidentiary hearing to "newly discovered evidence of the recantation of the testimony of a significant witness." Spaziano v. State, 660 So.2d 1363, 1365-66 (Fla. 1995). We refuse to alter our ruling on this issue.

Conclusion
In summary, we reaffirm that CCR is Spaziano's legal counsel; we find that Mello has effectively withdrawn as counsel and we direct *1371 him to turn over all Spaziano files to CCR; we extend, until November 15, 1995, the time in which to hold an evidentiary hearing; and finally, we enter an indefinite stay of execution pending the outcome of the evidentiary hearing. Our opinion of September 8, 1995, is modified to be consistent with this opinion. All other requested relief is denied.
It is so ordered.
GRIMES, C.J., and OVERTON, HARDING and WELLS, JJ., concur.
SHAW, J., concurs in part and dissents in part with an opinion, in which KOGAN and ANSTEAD, JJ., concur.
NO MOTION FOR REHEARING WILL BE ALLOWED.
SHAW, Justice, concurring in part, dissenting in part.
I fully agree with the majority's conclusion that in light of attorney Mello's inability or refusal to comply with this Court's decision of September 8, 1995, the office of the Capital Collateral Representative shall represent Spaziano in all post-conviction matters relating to this case.
I disagree with the November 15, 1995, deadline the majority opinion places on the trial court for conducting an evidentiary hearing on Spaziano's claim of recantation. As pointed out by Justice Kogan in his opinion concurring in part, dissenting in part with this Court's decision of September 8, 1995, this is a highly unusual case:
Today we are presented with a grossly disturbing scenario: a man facing imminent execution (a) even though his jury's vote for life imprisonment would be legally binding today, (b) with his conviction resting almost entirely on testimony tainted by a hypnotic procedure this Court has condemned, (c) with the source of that tainted testimony now swearing on penalty of perjury that his testimony was false, and (d) without a careful consideration of this newly discovered evidence under the only legal method available... .
Spaziano v. State, 660 So.2d 1363, 1367 (Fla. 1995) (Kogan, J., concurring in part, dissenting in part) (citations omitted). The problems presented by this case are further exacerbated by recent events as outlined in the majority opinion.
In light of the unusual procedural history of this case, the critical nature of the evidentiary issue before the trial court, and recent events, I would leave the time frame for conducting an evidentiary hearing to the trial court's discretion. The trial court is far better suited than we are to determine the logistical requirements of such a hearing.
I concur in the remainder of the majority opinion.
KOGAN and ANSTEAD, JJ., concur.
NOTES
[1] The test we expressed in Armstrong, 642 So.2d at 735, is as follows:

Recantation by a witness called on behalf of the prosecution does not necessarily entitle a defendant to a new trial. Brown v. State, 381 So.2d 690 (Fla. 1980), cert. denied, 449 U.S. 1118, 101 S.Ct. 931, 66 L.Ed.2d 847 (1981); Bell v. State, 90 So.2d 704 (Fla. 1956). In determining whether a new trial is warranted due to recantation of a witness's testimony, a trial judge is to examine all the circumstances of the case, including the testimony of the witnesses submitted on the motion for the new trial. Bell. "Moreover, recanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true. Especially is this true where the recantation involves a confession of perjury." Id. at 705 (quoting Henderson v. State, 135 Fla. 548, 561, 185 So. 625, 630 (1938) (Brown, J., concurring specially)). Only when it appears that, on a new trial, the witness's testimony will change to such an extent as to render probable a different verdict will a new trial be granted. Id.
[2] Spaziano v. State, 393 So.2d 1119 (Fla.), cert. denied, 454 U.S. 1037, 102 S.Ct. 581, 70 L.Ed.2d 484 (1981); Spaziano v. State, 433 So.2d 508 (Fla. 1983), affirmed, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984); Spaziano v. State, 489 So.2d 720 (Fla.), cert. denied, 479 U.S. 995, 107 S.Ct. 598, 93 L.Ed.2d 598 (1986); Spaziano v. State, 545 So.2d 843 (Fla. 1989); Spaziano v. Dugger, 557 So.2d 1372 (Fla. 1990); Spaziano v. State, 570 So.2d 289 (Fla. 1990); Spaziano v. Dugger, 584 So.2d 1 (Fla. 1991).
[3] Spaziano v. Singletary, No. 91-850-CIV-ORL-18 (M.D.Fla. Nov. 30, 1992) (denial of petition for writ of habeas corpus), affirmed, 36 F.3d 1028 (11th Cir.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 911, 130 L.Ed.2d 793 (1995).
[4] Spaziano v. Singletary, 36 F.3d 1028 (11th Cir.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 911, 130 L.Ed.2d 793 (1995).
[5] Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984).
[6] It is understood that the Volunteer Lawyers' Resource Center may lose funding as of October 1, 1995. The Center will, however, continue to exist as an entity until that time.
[7] See Parole Comm'n v. Lockett, 620 So.2d 153 (Fla. 1993) (Florida Constitution requires clemency records be kept confidential except as authorized by the Governor); see also Asay v. Florida Parole Comm'n, 649 So.2d 859 (Fla. 1994).
[8] It is interesting that when the executive branch was presented with this problem, it put the entire case on hold while investigating the claim. We should do no less, and certainly should not force a quick decision that only enhances the further risk of error.
[9] The affidavit, quoted in the majority opinion, is in irreconcilable conflict with DiLisio's testimony at trial, as quoted below from this Court's opinion on direct appeal.
[10] For reasons not adequately explained, counsel for Mr. Spaziano did not file under Rule of Criminal Procedure 3.850 or 3.851, but sought relief under a "motion" of his own invention.
[11] I do not find persuasive counsel's claim that the Office of Capital Collateral Representative has a conflict.
[1] Mello subsequently attempted to withdraw this motion.