315 So.2d 540 (1975)
John M. BEASLEY, Appellant,
v.
STATE of Florida, Appellee.
No. 73-940.
District Court of Appeal of Florida, Second District.
July 2, 1975.
*541 B. Anderson Mitcham, James S. Parham, and Lee S. Damsker, Tampa, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Richard G. Pippinger, Asst. Atty. Gen., Tampa, for appellee.
McNULTY, Chief Judge.
Appellant was convicted by a jury of second degree murder in the shooting death of his wife. His appeal herein assails only the denial of his motion for a new a new trial which, while it did question the fairness of the trial, was predicated essentially on "newly discovered evidence." The evidence relied on consists of recantation of testimony by certain eyewitnesses to the shooting together with the circumstances surrounding such recantation. We affirm the judgment and sentence but remand for further proceedings as will hereinafter more fully appear.
*542 The tragedy occurred the day after Christmas in 1972. At the time the victim-wife and the three teenage children of the parties, Gary, Carilyn and Susan, were preparing to move out of the family home because of long standing domestic difficulties. While they were packing their belongings appellant was entreating them to stay. The record reflects an irreconcilable conflict as to what followed next; but the evidence cannot be evaluated here, only whether the jury's conclusions therefrom must stand.
Before trial, each of the three children testified under oath before the assistant state's attorney and before the grand jury. Essentially, their testimony was consistent and, taken as a whole, established that when the victim-wife refused to yield to appellant's pleas that the family remain together appellant pulled a gun from his pocket, placed it against her head and fired, killing her.
Two police officers testified at trial that appellant, after having been given Miranda warnings upon his arrest, orally indicated he killed his wife because she was "running around" and because she was leaving him. A subsequent pre-trial statement by appellant given to a stenographer before the state's attorney, and again after Miranda warnings, repudiated such inculpatory statements. He contended at that time that the shooting was an accident. He said that just before the shooting, in renewal of a long-time agitation concerning his son Gary's involvement in the drug scene, 18-year-old Gary, whom he feared, came at him and punched him in the eye, knocked him down and jumped on him to continue pummeling him. He contends he fired the gun at Gary in self defense and that his wife must have gotten in the line of fire. This also was the substance of his testimony at trial. Additionally, at trial, he denied ever making statements to police officers to the contrary. As indicated, each of the children disputed appellant's version in their pre-trial testimony before both the state's attorney and the grand jury.
On the morning of trial, however, Gary and the younger daughter Susan informed the state's attorney that they were going to change their testimony. They said they had lied to the police officers, to the state's attorney and to the grand jury and that the truth was that Susan was in the bedroom at the time of the tragedy and doesn't know what was going on; that Carilyn, the older daughter, was outside at the car packing it with a suitcase and also was not present at the time of the tragedy; and that appellant was telling the truth when he said that the shooting took place in the course of an altercation between Gary and him. The assistant state's attorney in charge of the trial warned the two recanting witnesses of the consequences of perjury and that if they changed their testimony they were in serious jeopardy thereof. They persisted, however, and as a result neither of them was called by the state to testify. Accordingly, the sole eyewitness to the shooting called by the state to testify was the older daughter Carilyn. She substantially reiterated her original story and the jury believed her.
Following the trial the court conducted a lengthy hearing on the motion for a new trial. After having been fully and commendably warned by the court of the dangers of potential perjury charges, and after the assertion by the state that immunity would not be granted therefor, Gary and Susan nevertheless, even after having taken an afforded opportunity to talk to neutral counsel, testified under oath that they had indeed lied to the state's attorney's office and to the grand jury.
Carilyn, on the other hand, stuck to her guns and insisted that she had told the truth not only to the state's attorney and to the grand jury but also at trial; and that her testimony was consistent on all three occasions. Since the trial, though, and *543 since she has undergone undeniable emotional trauma, she admitted that she has had numerous nightmares and has often dreamed of the tragedy. She is not sure now, therefore, she said, whether her present recollection of what actually occurred is the truth as she witnessed it or as it has been influenced or contaminated by her nightmares. She affirmatively stated, however, that she thinks she told the truth at the time of trial. Other witnesses were called who testified to inconsistent statements made by Carilyn, but their testimony related largely to such inconsistencies occurring before trial.
On the foregoing evidence we think the trial judge was correct in denying the motion for new trial insofar as it relied on the "newly discovered evidence" concept to impeach Carilyn, the sole eyewitness called by the state. Citing Weeks v. State,[1] the court said that:
"`Applications for new trials upon the ground of newly-discovered evidence are looked upon by the courts with distrust and disfavor, and are granted only under the following restrictions: (1) The evidence must have been discovered since the former trial; (2) the party must have used due diligence to procure it on the former trial; (3) it must be material to the issue; (4) it must go to the merits of the cause, and not merely to impeach the character of a witness; (5) it must not be merely cumulative; (6) it must be such as ought to produce on another trial an opposite result on the merits,' ... and also pursuant to the testimony and evidence presented by the parties concerning said Motion and more specifically that presented by the Defendant in support of his Motion For a New Trial the Defendant did not meet the standards set forth in numbers two (2), three (3), and four (4) ... hereinabove mentioned."
We find no reason to disturb this determination.
We are gravely concerned, however, with the question of whether under the facts herein, the state satisfied the mandate of the United States Supreme Court in Brady v. Maryland[2] in which it was held that it is incumbent upon the prosecution to reveal to the defendant upon demand all evidence favorable to the defendant of which he is in all reasonable likelihood unaware.[3] Here, the record reveals that a written demand was indeed made to furnish all evidence known to the state which might be favorable to the defendant. It is undisputed also that on the morning of the trial two of the three eyewitnesses to the crime charged, and who were listed as state's witnesses, informed the prosecuting attorney that they had previously lied to the grand jury and to the state's attorney's office and that they intended to recant their testimony at the ensuing trial. It appears further from the record that the prosecutor did not inform the defense counsel of this latest development. We cannot tell, however, whether the defendant or his counsel were or should have been aware of it otherwise or could have reasonably and timely ascertained it.[4] The point was raised in argument on the motion for new trial but the court made no finding thereon either way. If indeed neither the defendant nor his counsel knew of it, and could not have *544 with reasonable diligence found out about it in sufficient time to have taken advantage of it at trial, then the discipline of Brady, supra, was violated; and we think under the facts in this particular case a new trial should be awarded.
We do not intend to hold here that a violation of Brady will, in every instance, constitute reversible error. We say as to this case, however, that when two of the three eyewitnesses to the homicide have receded from their pre-trial testimony which directly incriminated the accused and have informed the prosecuting attorney that they now intend to corroborate the exculpatory explanation given by the accused as it is known to the prosecution, the wrongful withholding of such information from the accused or his counsel by the prosecution obviously reaches the magnitude sufficient to contaminate the fairness of the trial. If true, due process would be thus subverted.[5]
In view of the foregoing, we conclude that no reversible error otherwise appears in the record and that the judgment and sentence appealed from should be, and they are hereby, affirmed. The cause is remanded, however, for a determination by the trial court, after hearing if necessary, as to whether the discipline of Brady v. Maryland, supra, considered in the light of our holding in State v. Gillespie,[6]supra, was violated. That is to say, whether the prosecution wrongfully failed to divulge evidence favorable to appellant of which he was unaware and which, notwithstanding due diligence, he was unlikely reasonably to discover. If the court finds in the affirmative, a new trial should be awarded.
Affirmed; but remanded with directions.
HOBSON and GRIMES, JJ., concur.
NOTES
[1] (Fla.App.3d, 1971), 253 So.2d 459.
[2] (1963) 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215.
[3] See State v. Gillespie (Fla.App. 2d, 1969), 227 So.2d 550. See also R.Cr.P. 3.220(a)(2) and 3.220(f).
[4] It may be suspected that the two younger children had pre-trial liaison with appellant, particularly since their recantation was in the offing, and that appellant was therefore aware of their availability to the defense. But, as noted, the record is silent on this and, in any event, the court made no determination in the matter.
[5] See n. 3, supra.
[6] Id.