393 So.2d 1119 (1981)
Joseph Robert SPAZIANO, a/K/a Crazy Joe, Appellant,
v.
STATE of Florida, Appellee.
No. 50250.
Supreme Court of Florida.
January 8, 1981.
Rehearing Denied March 6, 1981.
*1120 Richard L. Jorandby, Public Defender, Craig S. Barnard, Chief Asst. Public Defender and Jerry L. Schwarz, Asst. Public Defender, West Palm Beach, for appellant.
Jim Smith, Atty. Gen. and Wallace E. Allbritton and David P. Gauldin, Asst. Attys. Gen., Tallahassee, for appellee.
PER CURIAM.
This is a direct appeal from the imposition of a death sentence after the appellant had been convicted of first-degree murder. After receiving a jury recommendation of a life sentence for the murder conviction, the trial judge imposed the sentence of death. For the reasons expressed, we affirm the conviction but find we must remand for resentencing because the trial judge relied in part on information not available to the jury or the defendant in imposing the death sentence, contrary to Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), and also relied upon nonstatutory aggravating factors, in violation of section 921.141, Florida Statutes.
The material facts reflect that the skeletal remains of two bodies were discovered at the Altamonte city dump. One body was positively identified through the use of dental records as that of Laura Harberts. The appellant, Robert Spaziano, was charged with the murder of Harberts, and the principal witness for the state was Ralph Dilisio, a sixteen-year-old acquaintance of the appellant. Dilisio testified that Spaziano often bragged about the girls he had mutilated and killed, and on the occasion Dilisio and another individual accompanied the appellant to the Altamonte dump site where Dilisio saw two corpses, both covered with blood. Dilisio stated that Spaziano claimed responsibility for these killings; one of the corpses was determined at trial to have been Laura Harberts.
The appellant attacked Dilisio's testimony as being unreliable because at the time he viewed the corpses, Dilisio had been taking numerous types of drugs on a regular basis for at least a year. Defense counsel challenged the sufficiency of Dilisio's recall and perception abilities because of the drug habit, although Dilisio testified that on the particular day of the sighting he had not taken any drugs. Dilisio was able to successfully direct the police to the site where the corpse of Laura Harberts was found.
*1121 After receiving its instructions, the jury began its deliberations at 4:39 p.m. and at approximately 8:30 p.m. the court sent the jury to dinner. Upon its return, the following colloquy took place between the trial judge and the jury foreman:
THE COURT: Mr. Pascual, as foreman, the Court would inquire of you if you think that if given more time, there is a reasonable probability that the jury could agree upon a verdict, it being the jury's function to do so?
MR. PASCUAL: Your Honor, I don't know if I can say that there will be reasonable probability, but I think I can speak for the entire jury that I believe we would like to spend some more time. We don't feel, I don't believe, that we're at the point where we are at an impasse that cannot be overcome.
The jury then continued to deliberate until 10:26 p.m., at which time the jury was brought back, and, in response to an inquiry from the judge as to whether or not they would be able to reach a verdict, the foreman replied: "At this point, Your Honor, I don't believe so." The trial court then proceeded to instruct the jury by using standard jury instruction 2.19 in effect at the time of the trial, which read as follows:
Ladies and gentlemen, it is your duty to agree upon a verdict if you can do so without violating conscientiously held convictions that are based on the evidence or lack of evidence. No juror, from mere pride or opinion hastily formed or expressed, should refuse to agree. Yet, no juror, simply for the purpose of terminating a case, should acquiesce in a conclusion that is contrary to his own conscientiously held view of the evidence. You should listen to each other's views, talk over your differences of opinion in a spirit of fairness and candor and, if possible, resolve your differences and come to a common conclusion, so that a verdict may be reached and that this case may be disposed of. [Now renumbered as 2.21.]
The jury resumed their deliberations and approximately thirty minutes later, shortly after 11:00 p.m., they returned a verdict of guilty.
At the conclusion of the sentencing phase of the trial, the jury recommended that the defendant receive a sentence of life imprisonment. The trial court ordered a presentence investigation. In his sentencing order, the judge stated that he considered the presentence investigation report as well as the facts heard during the trial, and found that sufficient aggravating circumstances existed to justify the death sentence. The trial judge found that the circumstances of the offense were especially heinous, atrocious, and cruel, and, secondly, found that the defendant was previously convicted of felonies involving the use or threat of violence to the person. The trial judge based the second finding upon convictions listed in the presentence investigation report, including two convictions discussed in a confidential section of the report. Finally, the trial court found that the other statutory categories of aggravating circumstances were inapplicable, and that there were no mitigating circumstances.
Pursuant to Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), after notice of appeal was filed we directed the trial judge to disclose any information he may have used in sentencing that was not disclosed to the defendant. In his response, the trial judge advised this Court that neither party received copies of the confidential portion of the presentence investigation report, nor did they receive the personality inventory report that was attached to it. The trial judge did, in fact, use this information in imposing this death sentence.

Trial Phase
The appellant asserts as grounds for error in the trial phase that: (a) the evidence was insufficient to support the jury's verdict; (b) the trial court erred in its instructions to the jury concerning their responsibilities, and in giving the approved standard jury instruction after an apparent deadlock; (c) the prosecutor's summation was inflammatory and prejudicial; (d) the trial court improperly limited cross-examination of a *1122 prosecution witness; and (e) the trial court improperly denied appellant's request for a jury view of the scene.
With reference to the contention that the evidence is insufficient, the appellant asks us to reject in totality the testimony of Dilisio. Dilisio led the authorities to the dump where the bodies were found two years after he observed them with the appellant. Both the jury and the trial judge had a superior vantage point to weigh the credibility of Dilisio's testimony. We find the evidence in this record was sufficient to sustain this jury's verdict.
The contention that the trial judge made improper comments during a colloquy with the jury foreman concerning the status of jury deliberations, and the assertion by the appellant that our standard jury instruction for a deadlocked jury is improper, are both without merit. The colloquy was clearly reasonable and proper, and we find that our standard jury instruction, presently standard 2.21, is fair, unbiased and has been specifically approved by this Court in State v. Bryan, 290 So.2d 482 (Fla. 1974). In addition, such a charge has also been approved by the Fifth Circuit Court of Appeals. United States v. Thomas, 567 F.2d 638 (5th Cir.1978); United States v. Solomon, 565 F.2d 364 (5th Cir.1978); United States v. Bailey, 480 F.2d 518 (5th Cir.1973).
The contention that the prosecutor's comments were inflammatory and prejudicial, that the trial court improperly limited cross-examination, and that the trial court improperly denied a jury view, are clearly without merit and do not warrant discussion.
By Notice of Supplemental Authority, Spaziano raises the argument that the state may not under Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), force him to choose between waiving the statute of limitations which had run as to all lesser included noncapital offenses and having the jury instructed only as to first-degree murder. The Beck v. Alabama decision did not involve lesser included offenses for which the statute of limitations had run but instead concerned an express statutory prohibition on instructions for lesser included offenses when a defendant was charged with a capital offense. Whatever the implications of Beck v. Alabama may be, we do not find that it requires the jury to determine the guilt or innocence of lesser included offenses for which the defendant could not be convicted and adjudicated guilty.

Sentencing Phase
The trial judge considered a confidential portion of the presentence investigation report which contained information that the appellant had been a suspect in four homicides and three bombings, was a member of the "Outlaws" gang, had been convicted of rape and sentenced to the state prison, had been charged with forcible carnal knowledge, rape, and false imprisonment for another incident, but allegedly escaped prosecution because of harassment and threats towards the victim by gang members, and had been convicted of other nonviolent felony and misdemeanor offenses.
In Gardner v. Florida, decided after the trial and sentence in this cause, the United States Supreme Court held that a defendant in a death case is denied due process of law when the death sentence is imposed, even in part, on the basis of information that he had no opportunity to deny or explain. The Gardner decision prohibits the judge's use of this confidential information in the presentence investigation report without first disclosing that information to Spaziano and providing an opportunity to present evidence in response. Under the standards set down in Gardner, we must find clear error in the use of the confidential portion of the presentence investigative report.
Section 921.141(5), Florida Statutes, limits the factors in aggravation which may be considered by the trial judge in imposing the death sentence. In considering a defendant's prior criminal record, the trial judge is limited to only those offenses for which "the defendant was previously *1123 convicted." Provence v. State, 337 So.2d 783 (Fla. 1976). Further, these underlying convictions are also limited to "another capital felony or ... felony involving the use or threat of violence to the person." § 921.141(5)(b), Fla. Stat. The prior felony offenses involving violence for which the appellant in this case was convicted are proper factors to be considered in aggravation. However, the convictions for nonviolent offenses and misdemeanors and charges for which there was no conviction must be excluded as aggravating factors.
In conclusion, we find the Gardner violation and the statutory limiting factors in aggravation require this cause to be remanded to the trial judge for resentencing.
We affirm the conviction and remand for resentencing by the trial judge in accordance with the views expressed in this opinion.
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD, OVERTON, ENGLAND and ALDERMAN, JJ., concur.