692 So.2d 174 (1997)
STATE of Florida, Appellant,
v.
Joseph R. SPAZIANO, Appellee.
No. 87364.
Supreme Court of Florida.
April 17, 1997.
Robert A. Butterworth, Attorney General; and Margene A. Roper and Kenneth S. Nunnelley, Assistant Attorneys General, Daytona Beach, for Appellant.
*175 Gregg D. Thomas and Stephen F. Hanlon of Holland & Knight, Tampa; and James M. Russ of the Law Offices of James M. Russ, P.A., Orlando, for Appellee.
PER CURIAM.
In our decision in Spaziano v. State, 660 So.2d 1363 (Fla.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 722, 133 L.Ed.2d 674 (1996), we remanded this cause to the trial court for an evidentiary hearing on the newly discovered evidence of the recantation of trial testimony by a primary trial witness. In doing so, we gave the trial judge the responsibility to determine whether the recanted testimony of Anthony DiLisio required a new trial. After holding an extensive and thorough evidentiary hearing, the trial judge ruled that a new trial was required. The State appeals that order. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
After carefully reviewing the facts and circumstances surrounding this case, we find that, while there was conflicting evidence presented, there was certainly competent evidence to support the trial court's decision. This Court, as an appellate body, has no authority to substitute its view of the facts for that of the trial judge when competent evidence exists to support the trial judge's conclusion. Consequently, we affirm the order entered by the lower court.

PROCEDURAL HISTORY
The procedural history of this case is extensive. Spaziano was convicted in 1976 of the first-degree murder of Laura Harberts. The jury recommended a sentence of life imprisonment. The trial judge overrode the jury's recommendation and sentenced Spaziano to death. On direct appeal, we affirmed Spaziano's conviction and vacated his death sentence. We remanded for a resentencing. Spaziano v. State, 393 So.2d 1119 (Fla.1981). Spaziano was again sentenced to death by the trial judge and this Court affirmed the resentencing on direct appeal. Spaziano v. State, 433 So.2d 508 (Fla.1983). The United States Supreme Court granted the petition for writ of certiorari and, thereafter, affirmed this Court's decision. Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984). Spaziano has subsequently been the subject of five death warrants. He has survived all five of those warrants. The last warrant expired after this Court ordered the evidentiary hearing at issue in this appeal.

FACTS
As directed by this Court, a comprehensive evidentiary hearing was held. Twenty-six people testified at the hearing.[1]
The most critical testimony was the recantation offered by DiLisio. At Spaziano's original trial, DiLisio was the key witness for the State. In reality, the State's case at the original trial was almost completely dependant upon DiLisio's testimony. At the evidentiary hearing below, DiLisio recanted many statements made both before and during the original trial. To explain his recantation, he provided testimony as to his familial relationships. To that end, he clarified the relationships that both his father and step-mother had with Spaziano. He further testified that he experienced a devastating childhood. According to DiLisio, he was subjected to beatings by his father. Indeed, on one occasion his father slammed a door into his head about twenty times. The result of that particular incident was that both his nose and ears were bloodied. DiLisio also said that his father told him, prior to any of his testimony, that Spaziano was known to acquaint himself with girls and then injure them by cutting them up.
DiLisio proceeded to specifically deny those statements, made to law enforcement officers before trial and to the court during trial, that incriminated Spaziano. He expressly denied going with Spaziano to the *176 dump site near Forest City Road in August of 1973. He also denied being in Spaziano's apartment during that month. DiLisio then explained the circumstances in which he was approached by detectives Abbgy and Martindale (and subsequently questioned about Spaziano). He testified that he wrote a false statement concerning Spaziano on the night of May 13, 1975. He then stated that, two days later, he was taken to a hypnotist's office in Orlando. When asked to describe his feelings during that experience, he said that he "was scared" and that
I was emotionally experiencing some kind of mental trauma. I was just like a little sponge, or something. Things were suggested to me and I just went along with it.
I opened the door to really bad things from my mind. I was already an emotionally mixed-up young man starving for love, and these men  I thought I was pleasing them.
DiLisio stated that the police took him to the dump site near Forest City Road after the first hypnotic session. He expressly denied leading the police to the dump. He also denied having ever been to the dump site prior to that visit. Asked how he felt during the second hypnotic session, DiLisio testified:
It was very painful. In a sense, it was a mental pain, that I didn't feel the physical pain. It was like, things that they were saying to me, and things that I said the day before to them as they were saying it to me, I was like making a story or a movie, or something. And it was like I started to feel like it was really happening. It was like I started to feel the trauma of really seeing dead bodies.
I mean, it started becoming real in my imagination and in my mind, to where it really messed me up in the head. Like, I did really see them. I started to smell the smell of bad things, and I started being able to describe the  describe the situation in detail. Between all of the stuff that they told me, I was able to complete, like, a story.
He concluded his direct testimony by stating that he falsely testified at Spaziano's first degree murder trial. Then, on cross-examination, it was revealed that DiLisio had informed police officers months before the hypnotic sessions that he had once inquired of Spaziano as to the reasons behind the Altamonte dump murders. In response to the prosecutor's question asserting this fact, DiLisio responded, "If I told the officers that, that was a lie."
Apart from the recantation testimony offered directly by DiLisio, independent corroborating evidence was introduced that lent credence to DiLisio's description of the events leading up to his original statements. In fact, the trial judge wrote that "[DiLisio] now testifies that he did not tell the truth during the trial and provides a complicated explanation of the events which led up to his trial testimony. This testimony is credible and is corroborated by other evidence to a significant extent." There is little, if any, evidence to indicate that this period of DiLisio's life was anything other than traumatic.

ANALYSIS
In our decision remanding this case for an evidentiary hearing, we reaffirmed the principles to be followed when evaluating newly discovered evidence and recanted testimony. Spaziano, 660 So.2d at 1365. Those principles are set forth in both Armstrong v. State, 642 So.2d 730 (Fla.1994), and Jones v. State, 591 So.2d 911 (Fla.1991). In Armstrong, we addressed the issue of recanted testimony. There we stated that the "[r]ecantation by a witness called on behalf of the prosecution does not necessarily entitle a defendant to a new trial." Armstrong, 642 So.2d at 735. Further, we recognized that recanted testimony is exceedingly unreliable and instructed trial judges to examine all of the circumstances in the case. Id. In Jones, we clarified the standard by which newly discovered evidence is gauged. We announced that newly discovered evidence, in order to warrant relief, should be of such a nature as to make an acquittal probable on retrial. Jones, 591 So.2d at 915. In conducting the evidentiary hearing in this case, the trial judge was expected to adhere to these principles. The trial judge's order demonstrates that our remand instructions were scrupulously followed. He wrote:

*177 In order to prevail on newly discovered evidence the defendant must prove:
1. the evidence has been discovered since the former trial;
2. the evidence could not have been discovered earlier through the exercise of due diligence;
3. the evidence is material to the issue;
4. the evidence goes to the merits of the case and not merely impeachment of the character of the witness;
5. the evidence must not be merely cumulative; and
6. the evidence must be such that it would probably produce a different result on retrial.

Jones v. State, 591 So.2d 911 (Fla.[1991]); Henderson v. State, [135 Fla. 548, 185 So. 625 (1938)]; Smith v. State, [117 Fla. 458, 158 So. 91 (1934)]; Beasley v. State, 315 So.2d 540 (Fla. 2d DCA 1975); Weeks v. State, 253 So.2d 459 (Fla. 3d DCA 1971).
In determining whether a new trial is warranted due to recantation of a witness's testimony, a trial judge is to examine all the circumstances of the case, including the testimony of the witnesses submitted on the issue. Armstrong v. State, 642 So.2d 730 (Fla.1994); Bell v. State, 90 So.2d 704 (Fla.1956). Moreover, recanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true. Especially is this true where the recantation involves a confession of perjury. Id. at 705; Henderson v. State, supra.

The trial judge then concluded, finding:
The evidence of recantation in this case is newly discovered evidence which could not have been discovered earlier through the exercise of due diligence. It is material evidence which goes to the merits of the case. It is not cumulative evidence and it would probably produce a different result on retrial.
It is clear that the trial court utilized the appropriate law. With that in mind, we turn to the two specific arguments raised by the State.
The State first contends that the lower court inappropriately allowed two experts to testify. Their testimony, it is argued, was unauthorized, unwarranted, and unnecessary. The State essentially argues that Spaziano used expert testimony to reopen the issue of hypnosis, a claim long ago settled in this case. We find no merit in this assertion. "The question whether a new trial [should] be granted ... [by a trial judge] depends on all the circumstances of the case, including the testimony of the witnesses submitted on the motion for the new trial." Henderson v. State, 135 Fla. 548, 561, 185 So. 625, 630 (1938) (Brown, J., concurring specially, with Terrell, C.J., and Whitfield and Chapman, JJ., concurring)(quoting 16 C.J. Criminal Law § 2715 (1918)). Common sense dictates that the trial judge, in order to make a just decision, must be able to look at all the evidence presented in the case that affects the testimony of the recanting witness. The context in which the statements are made is crucial to gauge the credibility of the witness. We accordingly find no error in the admission of expert testimony in this case.
In its second argument, the State contends that the trial judge abused his discretion in concluding that a new trial was warranted after evaluating the testimony and evidence presented. Many years ago, in Henderson, we wrote:
A motion for a new trial is addressed to the sound judicial discretion of the trial court, and the presumption is that [it] exercised that discretion properly. And the general rule is that unless it clearly appears that the trial court abused its discretion, the action of the trial court will not be disturbed by the appellate court.
Henderson, 135 Fla. at 562, 185 So. at 630 (Brown, J., concurring specially, with Terrell, C.J., and Whitfield and Chapman, JJ., concurring). This Court has continually reaffirmed that view. Jent v. State, 408 So.2d 1024, 1031 (Fla.1981); Baker v. State, 336 So.2d 364, 370 (Fla.1976). This rule is neither new nor unusual. It has been repeatedly applied and fully explained in our civil cases. See generally Poole v. Veterans Auto *178 Sales & Leasing Co., 668 So.2d 189, 191 (Fla.1996); Ford Motor Co. v. Kikis, 401 So.2d 1341, 1342 (Fla.1981); Castlewood Int'l Corp. v. LaFleur, 322 So.2d 520, 522 (Fla. 1975).[2]
When we examine the lower court's determination for an abuse of discretion, we find none. The lower court conducted an extremely thorough evidentiary hearing. Twenty-six witnesses testified over the course of the week-long hearing. After hearing and viewing the evidence presented, the trial judge issued a well-reasoned order based on the legal guidelines expressly set forth by this Court. The trial judge noted in his order that the principles we established "have been applied here, although it has not always been easy." It is clear that the trial judge fully understood his responsibility in this case. We give trial courts this responsibility because the trial judge is there and has a superior vantage point to see and hear the witnesses presenting the conflicting testimony. The cold record on appeal does not give appellate judges that type of perspective. It is clear to us that there is evidence in this record to support the trial court's decision. Therefore, this record does not establish an abuse of discretion by the trial judge.[3]
For the reasons expressed, we affirm the trial court order.
It is so ordered.
KOGAN, C.J., and SHAW, GRIMES, HARDING and ANSTEAD, JJ., concur.
OVERTON, J., concurs specially with an opinion, in which GRIMES and WELLS, JJ., concur.
WELLS, J., concurs in result only with an opinion.
OVERTON, Justice, specially concurring.
I reiterate the view that I expressed in my concurring and dissenting opinion in Roberts v. State, 678 So.2d 1232, 1236-37 (Fla.1996). Specifically, I would again strongly suggest that the legislature review the perjury statute and increase the statute of limitations for perjured testimony in capital cases from the present three years to twenty-five years. In this regard, it is, I believe, important to note that prior to 1971 there was no statute of limitations for perjury committed in a capital case.
GRIMES and WELLS, JJ., concur.
WELLS, Justice, concurring in result only.
I concur in the result in this case because I honor the requirement that an appellate court defer to the trial court on an issue which is essentially a determination of credibility. However, I write separately because I am concerned that in reaching its decision the trial court relied upon materials which were not properly the focus of that determination. Consequently, I do not agree with parts of the majority opinion affirming the reasoning of the trial court's order. Since recanted testimony is an anathema to the proper functioning of the judicial system, it must be kept within very narrow bounds; my *179 concurrence is limited to the particular facts of this case.
In a Florida Rule of Criminal Procedure 3.850 hearing on the issue of newly discovered evidence based upon the alleged recantation of a trial witness, a trial court must start with the presumption that the trial testimony of the witness was true. The trial court must strictly test the evidence to determine whether it meets the threshold for "newly discovered evidence." After deciding that the evidence meets that threshold, the trial court must then examine all of the circumstances of the case, including the testimony of the witnesses on the issue, to determine whether the recantation warrants a new trial. Armstrong v. State, 642 So.2d 730 (Fla.1994). Courts must not lose sight of the fact that the hearing is not meant to be a forum to relitigate issues which have already been fully adjudicated. It is my view that courts must also strictly adhere to the rule that a new trial may not be granted on evidence which is merely impeaching. See Berry v. State, 10 Ga. 511 (1851); Tim A. Thomas, Annotation, Standard for Granting or Denying New Trial in State Criminal Case on Basis of Recanted Testimony  Modern Cases, 77 A.L.R.4th 1031 (1990). The presumption of correctness which attaches to a jury verdict can only logically stand if we similarly presume the evidence upon which the conviction and jury verdict are based are truthful.
At the hearing below, there was evidence presented concerning the circumstances surrounding the trial testimony of Anthony DiLisio as to his relationships with his father and his father's wife and DiLisio's cooperation with law enforcement. No sufficient reason has been given as to why all of the background information could not have been developed prior to the trial. In fact, much of it was. Consequently, this evidence was only procedurally barred impeachment of trial testimony. I find no proper reason to consider this evidence as a substantive basis upon which this motion should be decided twenty years after the trial testimony. I once again emphasize that a motion for new trial should not be granted on the basis of impeachment evidence. The strength of the credibility of the trial testimony should have been evaluated on the basis of the factual circumstances determined from other evidence and witnesses presented at the trial, not on the basis of this outside-the-record attack.
Likewise, the motion should not be decided on the basis of the propriety of the introduction of hypnotic evidence. The denial of the objection to this evidence's introduction was not reversed on direct appeal, see Spaziano v. State, 393 So.2d 1119 (Fla.1981), and was not a meritorious basis for collateral attack. See Spaziano v. State, 489 So.2d 720 (Fla. 1986). Nevertheless, the trial court focused on the reliability of this evidence. I believe it was error for the trial court to consider this issue as it did. While the reliability of hypnotically induced evidence is relevant in viewing the entire circumstances of the case, whether this evidence should have been admitted at trial is not presently relevant. Again, I am concerned that the trial court's focus is upon material which should have been used to attack at trial the hypnotically induced testimony and is not a proper basis for the present decision. I do not agree with the majority's approval of the trial court's order in this regard.
Rather, I believe that in this situation, the emphasis should be on why DiLisio was believable in January 1996. What has occurred that bolstered his credibility in 1996 so as to overcome the presumption that his 1976 sworn testimony was true? On this critical issue, there is conflicting evidence in the record. For instance, his recanted testimony is inconsistent and was only given after DiLisio was told that he could not be prosecuted for perjury. However, the record does show that there were several precipitating events in the time leading up to his recantation, including: the death of his brother and father; a serious car accident involving himself and his sister, wife, and daughter; and a boating accident in which DiLisio felt his life was in danger. Based on the trial court's superior vantage point for determining DiLisio's credibility on this issue, I defer to the trial court's determination. However, I find this decision to be very close.
NOTES
[1] The following people so testified: (1) Jerry Schwarz; (2) Gerald Justine; (3) Edward Stafman; (4) Timothy Hummill; (5) Rick Hayes; (6) Thomas Dunn; (7) Herbert Hartley; (8) Charles Wehner; (9) Anthony DiLisio; (10) Elmer Leidig; (11) Warren Holmes; (12) Tony Proscio; (13) Rosemary Brown; (14) Barbara Stein, M.D.; (15) Richard Ofshe, Ph.D.; (16) Darcie Fauss; (17) Timothy Loughrin; (18) Annette Jones; (19) Francis Lepine; (20) Edwin Householder; (21) Bill O'Connell; (22) Ralph Yannotta; (23) Michael Spaziano; (24) Robert Brown; (25) Elton Grantham; and (26) Donna Yonkin.
[2] The common law did not afford litigants a right to appeal certain new trial orders. In Ruth v. Sorensen, 104 So.2d 10, 15 (Fla.1958), we wrote:

But, as has been noted, the limitation imposed by the Seventh Amendment on federal appellate courts is not applicable to state courts. And soon after this State was admitted to the Union the Florida Legislature abrogated the common-law limitation on review by an appellate court of the evidence. This it did by Ch. 521, Acts of 1853 (now appearing in substantially its original form as § 59.06(1), Fla. Stat.1957, F.S.A.), which recited that "Whereas, It is expedient that certain orders and judgments of the Circuit Courts of this State, which now depend on the uncontrolled discretion of said Courts, should be reviewable in the Supreme Court," and expressly provided that an order either granting or denying a motion for new trial could be assigned as error in an appeal to this court....
(Emphasis added.) As the excerpt shows, however, trial judges have not possessed unfettered discretion since, at the latest, 1853.
[3] The State briefly argues one further point. It asserts that Spaziano misled the court in his presentation of testimony as to the fees and costs of two defense experts. We find this claim to be meritless. Indeed, the State failed to even cross examine the experts on the issue of fees. We are comfortable that the trial court was aware that the experts testified as defense witnesses, weighed all testimony according to its credibility, and based its conclusion on the totality of the circumstances. We will not displace that conclusion.