# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2022-3231
_____

THURSTON MCBRIDE,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Leon County.
Joshua M. Hawkes, Judge.

August 21, 2024

ROWE, J.

Thurston "Michael" McBride appeals his judgment and sentence for capital sexual battery.[*] He argues that the trial court

---

[*] The State filed a notice of cross-appeal, raising two claims of error, but failed to brief the issues. Thus, the claims are abandoned. *See Rosier v. State,* 276 So. 3d 403, 406 (Fla. 1st DCA 2019) ("[I]ssues not raised in the initial brief are considered waived or abandoned."); *Polyglycoat Corp. v. Hirsch Distribs., Inc.,* 442 So. 2d 958, 960 (Fla. 4th DCA 1983) ("When points, positions, facts and supporting authorities are omitted from the brief, a court is entitled to believe that such are waived, abandoned, or deemed by counsel to be unworthy.").

reversibly erred in denying his motion for new trial, asserting that the court applied the wrong standard when considering the motion and that the court abused its discretion when it found that the verdict was supported by the weight of the evidence. Finding no error by the trial court, we affirm.

*Facts*

McBride was charged in 2012 with one count capital sexual battery after the victim, PL, told his mother that McBride raped him when he was five years old. At the time PL alleges the rape happened, McBride was married to PL's godmother. PL lived with his godmother from infancy until age nine, while his mother battled drug addiction. When he was in kindergarten, PL's teacher showed his mother a picture PL had drawn depicting a man's penis pointed at the bottom of another's rectum.

Later, when he was eleven, PL's principal called his mother to report that PL wrote a suicide note during class. PL wrote that he wanted to kill himself and planned to do so that night. The principal alerted child protective services and the child protection team (CPT). A CPT investigator spoke with PL and, after ensuring he was not a risk to himself, gave PL's mother a card with her phone number, instructing her to reach out to the team if needed.

A few days later, PL told his mother that he again felt that he wanted to kill himself. His mother asked PL what caused these feelings. PL cried and seemed reluctant to tell her. Once his mother assured him that he was safe and could tell her anything, PL revealed that McBride raped him when he was five. His mother called the same CPT investigator she met with at the school days before. The investigator asked her to bring PL in for a recorded interview. During the interview, PL told the investigator that one night when he was five years old, McBride became angry with him for falling asleep in the bathtub. McBride yelled at PL, spanked him, and told him to go to his room. PL stated that McBride later entered the room, shut the door, and raped him. PL asserted that everyone was home and heard him scream during the attack. PL asserted that his godsister broke into the room and confronted McBride. PL told investigators that this was the only time McBride

2

ever sexually abused him. Soon after the rape, McBride left the home and PL never saw him again.

The case went to trial. The State presented testimony from PL, his mother, his teacher, his principal, and the CPT interviewer. The State also introduced a recording of the CPT's forensic interview with PL. The defense presented testimony from PL's godmother, his godsister, and McBride.

PL, then thirteen, testified about the rape and the emotional trauma he suffered. PL testified that because of the trauma, he skipped school for weeks while he was in kindergarten. PL also testified that before the rape, McBride often physically abused him. PL stated that he sustained injuries from the physical abuse that required hospitalization.

PL's mother testified that she did not know McBride when she first put PL in his godmother's care. She asserted that she knew something was going on with PL while he was still living with his godmother but did not know about any abuse or the rape. The first time she learned of the rape was after PL's suicide note when he was eleven years old.

PL's godmother and godsister denied knowing about physical or sexual abuse. PL's godsister denied ever breaking into the room or that she confronted McBride. She asserted that she would have removed PL from the house and called law enforcement if she discovered any abuse. And that she felt PL would have told her about the rape or any other abuse.

The jury found McBride guilty of capital sexual battery and the trial court sentenced him to life in prison. On direct appeal, this court affirmed McBride's judgment and sentence. *McBride v. State,* 123 So. 3d 564 (Fla. 1st DCA 2013) (unpublished table decision). McBride then moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. McBride alleged that his trial counsel was ineffective for failing to investigate and introduce PL's school attendance records. McBride asserted that the records would have impeached PL's testimony that he missed weeks of school during his kindergarten year, calling his credibility into question. The trial court denied the postconviction motion. On

3

appeal, this court reversed and remanded for a new trial. *McBride v. State,* 252 So. 3d 389, 392–93 (Fla. 1st DCA 2018).

At the second trial, the trial court allowed the defense to introduce PL's school attendance records into evidence. The records showed that, at most, PL missed one to three days of school during each school quarter between kindergarten through second grade.

The State presented testimony from PL, his mother, his teacher, his principal, and the CPT interviewer. The defense presented testimony from PL's godmother and godsister. McBride did not testify at his second trial. The trial court excluded PL's CPT interview from the second trial, finding that the methods used in the interview were not reliable. And that because PL was now an adult and planned to testify, the recording was not necessary.

PL's mother testified that she first learned of the rape when PL was in kindergarten, and then again when he was eleven. After being shown her testimony from the first trial, she asserted that she chose to report the rape the second time because PL was then in her custody, and she could do something to help him.

PL, then twenty-three years old, testified again about the rape. PL testified that McBride anally penetrated him with his penis. PL testified that he felt pain and wanted McBride to stop.

Some of PL's testimony at the second trial was internally inconsistent and contradicted statements he made at the first trial, twelve years earlier. For example, contrary to his testimony at the first trial, PL denied skipping school or going to the hospital. PL explained at the second trial that he would ask to go to the bathroom during class and then hide in the bathroom for extended periods of time, and that he mischaracterized this as skipping school in his CPT interview.

PL recalled getting in trouble in kindergarten for drawing a picture of an erect penis but could not explain why he drew it. He could not recall whether he was clothed when McBride entered the room. He could not recall if he screamed or if his face was in a pillow. PL maintained that his godsister broke into the room and

4

confronted McBride. PL denied ever telling his mother about the rape before age eleven.

Defense counsel confronted PL with his past contradictory testimony and with his school attendance records. PL asserted that he did not recall testifying at the first trial. When offered transcript excerpts to refresh his memory, PL refused to read his prior statements. PL stated that he could now only remember the "big picture" details of the rape.

PL's godsister also testified. She denied knowledge of any sexual abuse. She was in high school at the time, and often cared for PL at home after school. She testified that she never broke into the room to confront McBride or to get him away from PL. She stated that she would have reported any abuse to the police.

PL's former teacher and principal also testified. His teacher recalled that the day she found the suicide note. PL was withdrawn until he disrupted class by throwing balls of wadded paper toward her. In one of these paper wads was a note saying that PL intended to kill himself that night. She immediately took PL to the principal, who then called child protective services and his mother. The principal testified that PL cried during his conversation with her, which was unusual behavior for PL.

The jury again found McBride guilty of capital sexual battery. The court sentenced McBride to life in prison and designated him a sexual predator.

McBride moved for a new trial, alleging that the jury's verdict was against the greater weight of the evidence and could be reached only by disregarding inconsistent testimony. McBride argued that all other testimony contradicted PL's past and present statements. PL's testimony conflicted with his mother's statements about when she learned of the rape. His godsister maintained that she never entered the room while McBride raped PL. McBride argued that PL's testimony was also internally inconsistent. Taken together, these inconsistencies constituted impeachment evidence against PL. And because the case hinged solely on the credibility of PL, the jury could not have reached a guilty verdict without disregarding the evidence.

The State argued that PL's recollection of the rape was corroborated by the testimony of his principal and teacher about his withdrawn demeanor, class disruptions, and suicide note. And that any inconsistencies stemmed from PL testifying eighteen years after the rape. These inconsistencies did not mean PL was not credible.

At the hearing on the new trial motion, the court commented on its role as the "seventh juror" and raised questions on the applicable standard of review:

> [A]ll that to say, I don't get a good feel for the weight test, I mean, other than, I'm an additional juror.

> [I]t would seem like sufficiency is a higher burden under [the weight test], so sufficiency is enough to show the prosecution—well, legally insufficient means the prosecution failed to prove the defendant's guilt beyond a reasonable doubt. So sufficient means it can support a verdict beyond a reasonable doubt but weight means there's not enough for preponderance, which, to me, kind of reverses the burden. I don't know.

After a dialogue with counsel at the hearing, the court allowed McBride to submit additional written arguments on the applicable standard. Two weeks later, the trial court entered a written order denying McBride's motion for new trial.

The court found PL's testimony credible and that the evidence was "weighty enough" to support the verdict. That PL's testimony was emotional and coherent with respect to the details of the rape. And that PL had no obvious motive or bias to fabricate the allegations against McBride. The trial court concluded that PL's school attendance records and the conflicting testimony from other witnesses did not sufficiently undermine the credibility of PL's testimony. This appeal follows.

*Analysis*

6

McBride argues that the trial court reversibly erred in denying the motion for new trial. He asserts that the trial court's comments during the motion hearing show that the court failed to apply the correct legal standard when considering the new trial motion. And, even if the trial court applied the correct standard, McBride argues that the court abused its discretion by denying the motion because no reasonable person would find PL's testimony credible.

This court reviews de novo whether the trial court applied the correct legal standard ruling on a motion for new trial. *Jordan v. State,* 244 So. 3d 1178, 1179 (Fla. 1st DCA 2018). We review the court's ruling for abuse of discretion. *Id.*

We find no error here. Although the trial court raised questions at the hearing about the applicable standard for ruling on a motion for new trial, the court's written order clearly and unambiguously applies the correct legal standard. When considering a motion for a new trial, a trial court must act as the "seventh juror" to find whether the verdict is contrary to the weight of the evidence, and "whether a greater amount of credibe evidence supports an acquittal." *State v. Bohler*, 263 So. 3d 291, 293 (Fla. 1st DCA 2019); *Bell v. State,* 248 So. 3d 208, 209 (Fla. 1st DCA 2018); *Tibbs v. State,* 397 So. 2d 1120, 1123 n.9 (Fla. 1982) ("Rule 3.600(a)(2) thus enables the trial judge to weigh the evidence and determine the credibility of witnesses so as to act, in effect, as an additional juror.").

The trial court, in considering the new trial motion, cited and evaluated the very authorities cited above: *Bohler*, *Bell*, and *Tibbs*. The court's written order reflects it applied the required standard precisely. The trial court weighed the evidence as a juror would and found that PL was a credible witness. The trial court found that PL had no motive to fabricate his testimony about the rape. The trial court noted—unlike other cases—that there was no confusion or mistake in identification. The trial court found that PL's inconsistencies on details surrounding the rape and abuse (his school attendance, whether he was hospitalized for other physical abuse, and so on) did not undermine PL's coherent and emotional trial testimony recounting the sexual battery committed by McBride.

7

After citing the correct legal standard, the trial court concluded that the evidence proffered was "weighty enough" to support the guilty verdict. The court's findings and analysis show that the trial court correctly assessed whether the verdict was against the weight of the evidence. *See Jordan,* 244 So. 3d at 1179 ("[A] trial court is not required to use 'magic words' when ruling on a motion for a new trial[.]") (citing *Palmer v. State,* 192 So. 3d 1289 (Fla. 1st DCA 2016)); . . . . "); *see also Daniels v. State,* 313 So. 3d 247, 253 (Fla. 1st DCA 2021) ("Here, the trial court emphasized that it acted as another juror when it considered whether the jury's verdict was contrary to the weight of the evidence. Thus, the court used the correct standard . . . . ").

But McBride maintains that even if the trial court applied the correct legal standard, the trial court abused its discretion in denying the new trial motion. We disagree.

The decision to grant or deny a motion for a new trial is within the trial court's discretion and is entitled to a presumption of correctness. *See State v. Spaziano,* 692 So. 2d 174, 177 (Fla. 1997); *Mitchell v. Burgess & Cook, Inc.,* 238 So. 2d 460, 461 (Fla. 1st DCA 1970); *Moreland v. State,* 253 So. 3d 1245, 1247 (Fla. 1st DCA 2018) ("[R]easonable inferences and deductions must be taken in a manner favorable to affirming a trial court's ruling, not reversing it."). An appellate court will find error in a trial court's denial of a new trial only when no reasonable person would adopt the same view as the trial court. *Stephens v. State,* 787 So. 2d 747, 754 (Fla. 2001). Or if there is error that is "clear and patent on the record." *Allstate Ins. Co. v. Wood,* 535 So. 2d 699, 700 (Fla. 1st DCA 1988) (citing *Johnny Roberts, Inc. v. Owens*, 168 So. 2d 89 (Fla. 2d DCA 1964)). We find no such error here.

The trial court found PL's detailed testimony about the sexual battery to be credible and that the weight of the evidence supported the jury's verdict. PL's former teacher and principal corroborated PL's testimony about being withdrawn and acting out in school in the years after the rape. PL drew explicit images of a man's penis and a rectum while still in kindergarten—the same year that PL testified McBride raped him. When he was eleven, PL experienced suicidal ideation. PL's godmother and godsister

corroborated that McBride was kicked out of the home around the time PL alleges he was raped.

The trial court, sitting as the "seventh juror" determined that conflicts in PL's statements and testimony, and conflicting testimony from the defense's witnesses were not sufficient to undermine all other evidence presented. This court will not disturb that determination. *See Looney v. State,* 941 So. 2d 1017, 1023—24 (Fla. 2006) (holding that the trial court's credibility determination will not be disturbed on appeal); *M.A.B. v. Dep't of Health & Rehab. Servs.*, 630 So. 2d 1252, 1254 (Fla. 1st DCA 1994) (same); *Porter v. State*, 788 So. 2d 917, 923 (Fla. 2001) (noting that a trial court has a "superior vantage point in assessing the credibility of witnesses").

Because the trial court did not err in denying the motion for new trial, we AFFIRM McBride's judgment and sentence.

LEWIS and M.K. THOMAS, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Rachael E. Reese of O'Brien Hatfield Reese, P.A., Tampa, for Appellant.

Ashley Moody, Attorney General, and Virginia Chester Harris, Senior Assistant Attorney General, Tallahassee, for Appellee.